ALFRED N. KOPLIN & COMPANY, INC., Plaintiff-Appellee, *v.* CHRYSLER CORPORATION, AIRTEMP DIVISION, Defendant-Appellant.

Second District (1st Division)   No. 75-260

Opinion filed June 10, 1977.

John T. Perry, of Vescelus, Perry & Pollard, of Wheaton, for appellant.

Donald J. Novotny, of Berwyn, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Defendant Chrysler Corporation Airtemp Division appeals from a judgment for the plaintiff, Alfred N. Koplin & Co., Inc., entered upon a jury verdict in an action for damages resulting from the breakdown and failure of two air conditioning units manufactured by Chrysler. We conclude that the jury verdict is, on this record, not sustainable on the basis of breach of warranty because an express warranty by its terms both excluded liability and included a valid disclaimer of warranty. We also resolve an issue of first impression in this jurisdiction in determining that no action may be maintained in tort (negligent manufacture was here alleged) where only "economic loss" is involved. There being no basis for

the verdict rendered below, the judgment of the circuit court of Du Page County is reversed.

## I.

Plaintiff filed an amended complaint against Chrysler, the manufacturer of the units, Specialty Products Equipment Corporation, the supplier of the units, and Acitelli Heating and Piping Co., Inc., the installer. At the end of plaintiff's case the trial court directed verdicts in favor of Specialty Products and Acitelli. Plaintiff has not cross-appealed. The trial court denied Chrysler's oral motions for a directed verdict made at the close of plaintiff's case and at the close of all the evidence.

Count I of plaintiff's amended complaint alleges a breach of warranty,[1] count II alleges negligence,[2] and count III merely alleges that the second unit had to be replaced and repaired at a cost of $16,403. All of Koplin's alleged damages are based upon "economic" losses incurred in the repairing and replacing of the Chrysler units.

The jury returned a verdict for Koplin in the amount of $24,188 and answered two special interrogatories. The answer to the first interrogatory indicated that the defendant had made an express warranty to the plaintiff in connection with the sale of the air conditioning equipment involved in the case; the second answer stated that neither the plaintiff nor his agents or employees were guilty of contributory negligence with respect to the breakdown of the equipment.[3]

In its brief and argument Chrysler contends that the trial court erred in denying its motions for a directed verdict, and in denying its post-trial motion for judgment notwithstanding the verdict. It argues that plaintiff failed to prove that it negligently manufactured the product. Chrysler further argues that the units failed due to faulty installation, inadequate maintenance and improper adjustment of the machine controls. Koplin

---

[1] "That the Plaintiff, because of this *breach of warranty* on the part of the Defendants, in that the equipment in question did not function or operate reasonably, was required to repair and modify the equipment at a cost of $29,500.00 after the Defendants and each of them failed to make the necessary corrections or modifications." (Emphasis supplied.) First Amended Complaint, at 3.

[2] "* * * that the equipment in question was installed, *manufactured* and supervised by the defendants in such a wrongful, faulty, *negligent* and unsuitable manner that it did not function to cool the premises in question as anticipated * * * that the Defendants and each of them installed, *manufactured* and serviced the air conditioning equipment in such a defective way that it did not function as could reasonably be expected, and it still does not so function. * * * that the Defendants and each of them failed to install the air-conditioning in question in a good, sufficient and workmanlike manner so that it thereafter and still does fail to operate in a good and sufficient manner as may be expected reasonably of equipment of its kind and description." (Emphasis supplied.) First Amended Complaint, at 4.

[3] The opening statements to the jury, final arguments of the parties, and instructions given the jury do not appear as a part of the record presented on appeal. The only indication in this record of the bases for the jury verdict is the interrogatory responses here noted.

responds that the evidence of defendant's negligent manufacture was sufficient to support the jury verdict.

## II.

■■ Koplin's case against Chrysler was apparently submitted to the jury on two theories, breach of warranty and negligence.[4] In its answer to the first special interrogatory the jury found that Chrysler made an express warranty to Koplin. Our examination of the record and exhibits indicates that the express warranty found by the jury must be based upon the warranty card found in the exhibit file. The warranty as indicated on the warranty card from Chrysler Air-Temp covers the equipment for 12 months after startup or 18 months from shipment, whichever comes first. The original unit was installed June 10, 1969. On June 15, 1971, this unit failed. The second unit was installed either August 10, 1971, as indicated by the warranty card, or September 1, 1971, as stated in plaintiff's complaint. This unit failed in June 1973. The warranty thus, by its own terms, is not effective in binding Chrysler as to either unit because the warranty period had expired as to both. Moreover, the warranty card contains an effective disclaimer of the warranties of merchantability and fitness for a particular purpose.[5] In view of this disclaimer there is no support for the jury verdict on the basis of an implied warranty of merchantability or fitness for a particular purpose. We thus conclude that the jury's verdict, if supportable, was based solely on negligence theory, a fact apparently recognized by the parties, as the presence or lack of evidentiary support for the jury determination that Chrysler was negligent is the sole basis of argument on appeal.

## III.

In recent years the law governing the liability of a manufacturer to a purchaser of goods with whom he has not dealt personally has undergone great change. This change, occasioned by the gradual recognition of increased legal responsibility of a manufacturer for the consequences of his enterprise, has involved a revolution in terms of the legal theories employed to describe the liability of the manufacturer to the purchaser.

---

[4] Count III of plaintiff's complaint, which merely alleged that the second air conditioning unit had to be replaced and repaired, is subsumed under one or the other of these theories.

[5] The language of the written warranty disclaiming liability, which appears following a positive statement of the nature of the warranty, is as follows: "This warranty is made expressly in lieu of any warranties otherwise implied in law, including, but not limited to implied warranties of merchantability or fitness for any particular purpose."

This language successfully disclaims liability under section 2—316 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—316). It does not appear, from the record, that plaintiff contended that the disclaimer was "unconscionable." See Ill. Rev. Stat. 1975, ch. 26, par. 2—302; cf. Ill. Rev. Stat. 1975, ch. 26, par. 2—719.

Traditional legal thought has from the outset divided the lines of legal theory in this area of the law into two primary branches, that of torts, and that of contract. In his treatise on torts Prosser describes the distinction between tort theory and contract theory as follows:

> "The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. Even as to these individuals, the damages recoverable for a breach of the contract duty are limited to those reasonably within the contemplation of the defendant when the contract was made, while in a tort action a much broader measure of damages is applied." (Prosser, Torts §92, at 613 (4th ed. 1971).)

The theories available to a consumer suing a manufacturer with whom he has not dealt have varied from express and implied warranty (contract theory) to negligence and misrepresentation (tort theory) and more recently strict liability in tort.[6] No single approach has been uniformly adopted by the courts, and counsel, faced with the task of assessing and characterizing a litigant's legal position, is often faced with a nettlesome quandary.

Plaintiff in this case chose to employ negligence theory in seeking to impose liability on defendant.[7] Negligence theory requires plaintiff to establish that defendant owed him a duty, breached such duty, and that such breach was the cause of damage. In products liability cases, such as this case, it is extremely difficult for plaintiff to establish a failure to exercise due care (breach) on the part of a defendant with whom he had had no personal dealings. It is such difficulty, typical of a products liability case, which led to the development of the doctrine of strict liability in tort, a doctrine which avoids the difficulties in establishing breach. (See 2 Frumer and Friedman, Products Liability §16A (1976).) Plaintiff in this case, having chosen to sue in negligence, was faced with the difficulties attending such theory. It is thus not surprising that the

---

[6] The strict liability doctrine is formulated in Restatement, Second, of Torts §402A (1965). *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, adopted the doctrine of the Restatement in Illinois.

[7] Warranty has heretofore been discussed and on the facts of this case discarded as a viable basis for sustaining defendant's liability.

argument on appeal is concerned with whether or not the proofs at trial sustain a finding of negligence.

■■ In approaching resolution, we find that this case falls within the narrow range of situations dividing tort theory from contract theory. This is so because the loss suffered by plaintiff in this case was "economic" loss—damage suffered to two air conditioner units which had been purchased from defendant manufacturer—as opposed to damage suffered from physical harm to the person or property. "Economic" loss or harm has been defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damage to other property * * *" (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966)) and also "* * * diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold" (Note, *Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966)). "Economic" loss as in this case may be contrasted with "physical harm" as referred to in, *e.g.*, Restatement (Second) of Torts §§395, 402A and 402B (1965).[8] The line of demarcation between physical harm and economic loss in our view reflects the line of demarcation between tort theory and contract theory.

We do not find it necessary to undertake an examination of the evidence introduced at trial in view of our conclusion that a manufacturer's liability is not sustained where a plaintiff seeks recovery from a manufacturer in tort theory for "economic" losses.[9]

Two cases of seminal significance in determining whether a manufacturer may be liable in tort for "economic losses" are *Santor v. A & M Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305, and *Seely v. White Motor Co.* (1965), 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17. In *Santor* plaintiff purchased carpeting manufactured by defendant from a third-party distributor. The carpeting proved defective. Plaintiff sued defendant manufacturer, originally contending that the carpet was defective. Later an additional paragraph was added charging a breach of implied warranty of merchantability. The lower court decided that there was an implied warranty of merchantability from the manufacturer to the purchaser even though there had been no privity of contract between the parties. On appeal the New Jersey Supreme Court held that the plaintiff could maintain his action directly against the manufacturer on the theory

---

[8] Restatement (Second) of Torts §402A (1965), *e.g.*, states that "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property, if * * *." (Emphasis supplied.)

[9] The parties, unfortunately, in their argument and briefs, neither noted nor focused upon the issue we deem determinative.

of breach of an implied warranty of reasonable fitness despite the lack of privity of contract. For purposes of the present discussion, however, it is not the holding of the case which is pertinent but the comments which the court made in dicta. Proceeding from its holding the court went on to state that plaintiff's cause of action could also have been maintained in tort, noting that the appropriate theory under which to proceed would be that of strict liability in tort. The court then stated:

> "* * * the strict liability in tort formulation of the nature of the manufacturer's burden to expected consumers of this product represents a sound solution to an ever-growing problem, and we accept it as applicable in this jurisdiction. And, although the doctrine has been applied principally in connection with personal injuries sustained by expected users from products which are dangerous when defective, we reiterate our agreement with *Randy Knitwear, Inc. v. American Cyanamid Company* [(1962), 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399], that the responsibility of the maker should be no different where damage to the article sold or to other property of the consumer is involved." 44 N.J. 52, 66, 207 A.2d 305, 312.

■■ A short time after the decision in *Santor* was rendered the California Supreme Court voiced disagreement with the conclusion reached in *Santor*. In *Seely v. White Motor Company* plaintiff sued defendant manufacturer to recover for damages sustained to a truck when it overturned as a result of defective brakes. No damages for personal injury were alleged. Plaintiff sought to recover his damages for the repair of the truck after the accident, damages for the money he had paid on the purchase price of the truck (which he had lost when the truck was repossessed by the dealer) and damages for lost profits as a result of deprivation of the normal use of the truck resulting from the accident. The court held that plaintiff was entitled to recover from defendant on the basis of the express warranty existing between the parties. The court went on, however, to examine the relationship between the warranty (contract theory) and strict liability (tort theory). Critical of the decision in *Santor*, the court noted that "only if someone had been injured because the rug [involved in *Santor*] was unsafe for use would there have been any basis for imposing strict liability in tort," and went on to state:

> "The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring

his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agreed that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. (Wyatt v. Cadillac Motor Car Division, 145 Cal. App. 2d 423, 426, 302 P.2d 665, disapproved on other grounds in Sabella v. Wisler, 59 Cal.2d 21, 31, 27 Cal. Rptr. 689, 377 P.2d 889; Trans World Airlines v. Curtiss-Wright Corp., 1 Misc.2d 477, 148 N.Y.S.2d 284, 290.) The Restatement of Torts similarly limits strict liability to physical harm to person or property. (Restatement of Torts Second (Tent. Draft No. 10) §402A.)

The law of warranty is not limited to parties in a somewhat equal bargaining position. Such a limitation is not supported by the language and history of the sales act and is unworkable. Moreover, it finds no support in Greenman. [*Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 63, 27 Cal. Rptr. 697, 377 P.2d 897.] The rationale of that case does not rest on the analysis of the financial strength or bargaining power of the parties to the particular action. It rests, rather, on the proposition that "[t]he cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business." (Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 462, 150 P.2d 436 [concurring opinion].) That rationale in no way justifies requiring the consuming public to pay more for their products so that a manufacturer can insure against the possibility that some of his products will not meet the business needs of some of his customers. Finally, there was no equality in bargaining position insofar as the damages plaintiff recovered in this case are concerned. Unlike the defendant in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, White is not seeking to enforce an industry-wide disclaimer of liability for personal injuries. Here, plaintiff, whose business in trucking, could have shopped around until he found the truck that would fulfill his business needs. He could be fairly charged with the risk that the product would not

match his economic expectations, unless the manufacturer agreed that it would. Indeed, the Uniform Commercial Code expressly recognizes this distinction by providing that limitation of damages is prima facie unconscionable in personal injury cases, but not in cases of commercial loss. (Com. Code, §2719.)" 63 Cal.2d 9, 18-19, 45 Cal. Rptr. 17, 23-24, 403 P.2d 145, 151-52.

Following the lines of division between *Santor* and *Seely* courts in this country have divided over whether an action may be maintained in tort against a manufacturer for recovery of "economic" losses. (See, *e.g.,* *Cova v. Harley Davidson Motor Co.* (1970), 26 Mich. App. 602, 182 N.W.2d 800; *Spence v. Three Rivers Builders & Masonry Supply, Inc.* (1958), 353 Mich. 120, 90 N.W.2d 873; *Berg v. General Motors Corp.* (1976), 87 Wash. 2d 584, 555 P.2d 818; *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.* (1974), 58 Wis. 2d 193, 206 N.W.2d 414; *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.* (1976), 72 Wis. 2d 38, 240 N.W.2d 124, in agreement with the result reached in *Santor* that tort theory will sustain recovery against a manufacturer for economic loss. But see *Hawkins Construction Co. v. Matthews Company, Inc.* (1973), 190 Neb. 546, 209 N.W.2d 643, and *Fredonia Broadcasting Corp., Inc. v. RCA Corp.* (5th Cir. 1973), 481 F.2d 781 (5th Cir. applying Texas law), in agreement with the result in *Seely* that tort theory will not permit recovery in an action for "economic losses" against a manufacturer.) In his treatise on torts Prosser states:

"Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule, to be encountered later, that purely economic interests are not entitled to protection against mere negligence, and so have denied recovery." (Prosser, Torts §101, at 665 (4th ed. 1971).)[10]

Other pertinent sources which have discussed a manufacturer's liability for economic losses caused by its products are Frumer and Friedman, Products Liability §16.05(2) (1976); Note, *Economic Loss and Products Liability Jurisprudence,* 66 Colum. L. Rev. 917 (1966): Note, *Manufacturer's Liability to Remote Purchases for 'Economic Loss' Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539 (1966); and Note, *Manufacturer's Responsibility for Defective Products: Continuing Controversy over the Law to be Applied,* 54 Calif. L. Rev. 1681 (1966). *Cf.* Annot., "Privity of Contract as Essential in Action against Remote Manufacturer or Distributor for Defects and Goods not Causing Injury to Person or to other Property." 16 A.L.R. 3d 683 (1967).

---

[10] This quotation is notable because Prosser specifically indicated that purely economic interests are not entitled to protection against "negligence." Plaintiff's amended complaint alleged negligence (*inter alia*) rather than seeking to impose liability in tort by way of strict liability theory or other formulation.

Few Illinois cases have even touched, let alone shed significant light upon, the issue which we deem decisive in this case.[11] One case of some pertinence is, however, *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362. In *Rhodes* plaintiff sued defendant manufacturer seeking to recover for damages which resulted from the leakage of aerosol cans in which plaintiff's product was packaged. The cans were purchased by plaintiff from a third-party dealer. Count II of plaintiff's complaint stated a cause of action in implied warranty against defendant manufacturer on the basis that defendant "knew the particular purpose to which plaintiff intended and did in fact put the aerosol cans for which they were required," and plaintiff relied upon the skill and judgment of agents and representatives of defendant manufacturer in the design, engineering and utility of the aerosol cans used by it. Judgment was entered in favor of defendant in the trial court. On appeal plaintiff contended that lack of privity did not bar his cause of action against defendant, arguing the applicability of *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, and other cases which adopted the strict liability in tort doctrine. Defendant argued that the case was not appropriate for application of the doctrine of strict liability in tort. With this contention the *Rhodes* court agreed, simply stating:

> "We are not persuaded that the doctrine of 'strict tort liability' should be applied here. Therefore, we have decided to base our decision in the instant case on the third-party beneficiary theory, which plaintiff urges." (72 Ill. App. 2d 362, 368.)

*Rhodes* is the only case in this jurisdiction which has considered the applicability of tort theory in the context of a manufacturer's liability to a purchaser for "economic losses."

■■■ We conclude, as did the court, without analysis, in *Rhodes*, that tort theory (there strict liability, here negligence) does not extend to permit recovery against a manufacturer for solely "economic losses" absent property damage or personal injury from the use of the product. Our decision herein is limited to those products liability cases which seek recovery solely for economic losses based upon negligence and strict liability theories. The province of contract law is that group of situations which involve the reasonably foreseeable commercial expectations of purchasers and sellers. This area of law is governed by statutory law (*e.g.,*

---

[11] In *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1965), 68 Ill. App. 2d 297, 216 N.E.2d 282, the plaintiff filed suit for damages to its hotel rooms; *i.e.,* carpeting, furniture, walls, loss of rent and replacement of air conditioner units, based upon express warranty, implied warranties and negligence. The trial court granted defendant's motion to dismiss the third amended complaint for failure to state a cause of action. The appellate court held that plaintiff did state a cause of action for implied warranty of fitness and negligent design or manufacture. *Admiral* is distinguishable from the case at hand because it involved damage to other property as well as economic loss in replacing the malfunctioning units.

the Uniform Commercial Code) and the common law of contracts. Plaintiff in this case apparently does not argue that the warranty which ran from Chrysler to plaintiff as purchaser of the air conditioning units was unconscionable under the Uniform Commercial Code. As we have noted above there has apparently been an effective disclaimer of warranty in this case.[12] Inequalities in the bargaining position of purchasers of goods versus manufacturers of those goods will certainly arise. Nonetheless, as noted by the analysis of the California Supreme Court in *Seely v. White Motor Co.*, the body of legal principles invoked in situations when "economic" loss is involved are those of contract law. Within the framework of contract law, steps have been taken, both in a relaxation of common law implied warranty concepts[13] and by the enactment of legislation[14] to remedy inequities which exist in the bargaining relationship of purchaser and manufacturer. Contract and tort, however, remain distinct categories serving distinct needs in the rubric of our law. Our examination of this case indicates that there is no basis for plaintiff's recovery in contract theory and that recovery in negligence is not sustainable because merely "economic loss" is involved.

The judgment of the circuit court of Du Page County is reversed.

Judgment reversed.

SEIDENFELD, J., concurs.

---

[12] See footnote 4 above.

[13] See *e.g., Seely v. White Motor Company* (1965), 63 Cal. 2d 9, 403 P.2d 45, 45 Cal. Rptr. 17, and, in Illinois, *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362, in which the court held that plaintiff could sue in implied warranty on a third party beneficiary theory, thus avoiding the requirement of privity.

[14] See, *e.g.*, Ill. Rev. Stat. 1975, ch. 26, par. 2—302 (the provisions of the Uniform Commercial Code governing unconscionable contracts or clauses) and the Federal Warranty Act (15 USC §2301 *et seq.*) which prescribes standards for warranties given respecting consumer products.