**ROCKY MOUNTAIN HELICOPTERS, INC.**

v.

**BELL HELICOPTER COMPANY, A Division of Textron, Inc.**

**Jerry Loren JAMES, Richard Thomas Woodworth, Jere R. Calef, Rocky Mountain Helicopters, Inc., A Corporation**

v.

**BELL HELICOPTER COMPANY, A Division of Textron, Inc., A Corporation, Avco-Lycoming Division of Avco Corporation, A Corporation, Spring Division of Borg-Warner Corporation, A Corporation.**

**ROCKY MOUNTAIN HELICOPTERS, INC.**

v.

**BELL HELICOPTER COMPANY, A Division of Textron, Inc., A Corporation, Avco-Lycoming Division of Avco Corporation, A Corporation, Spring Division of Borg-Warner Corporation, A Corporation.**

Civ. A. Nos. CA–4–78–54–K, CA–4–78–110–K and CA–4–78–215–K.

United States District Court, N. D. Texas, Fort Worth Division.

Oct. 19, 1979.

Larry DeCoster, Kern & Wooley, Santa Monica, Cal., John R. Howie, Dallas, Tex., for plaintiff.

Frank Finn, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for AVCO.

Beale Dean, Fort Worth, Tex., for Bell.

## MEMORANDUM OPINION

BELEW, District Judge.

This opinion deals with three causes of action arising out of three separate crashes

of aircraft manufactured by Defendant Bell Helicopter Company (Bell). The asserted theories of recovery are, for all practical purposes, identical and counsel for each of the parties has briefed and argued the three cases as a unit.

Defendants Bell and Borg-Warner, Inc. (Borg-Warner) have moved to dismiss Plaintiff Rocky Mountain Helicopters, Inc.'s (Rocky Mountain) strict liability and breach of implied warranty claims. Bell has filed its motion in all three causes. Defendant Borg-Warner has joined in Bell's motion only with regard to the suit filed by Jerry Loren James, et al. The individual Plaintiffs, James, Richard Thomas Woodsworth and Jere R. Calef, are not involved in or affected by these motions.

*History*

These actions were originally filed on October 18, 1977, in the Superior Court for the State of California for the County of Los Angeles. On Petition prepared by counsel for Defendant Avco-Lycoming Corporation and joined by Bell and Borg-Warner, the three cases were removed to the United States District Court, Central District of California in December, 1977 and January, 1978.

Bell Filed Motions to Transfer venue to this Court in February, 1978. The grounds for those motions were convenience of witnesses, and the cases were ordered transferred in March, 1978.

*Facts*

The principal parties involved in the three motions before this Court are Bell, Borg-Warner, and Rocky Mountain.

Plaintiff Rocky Mountain is a Utah corporation. The exact nature of Rocky Mountain's business is unclear, but the pleadings and the various other documents in the record indicate that Plaintiff is engaged in helicopter leasing and service throughout a multi-state area.

Rocky Mountain suffered the loss of three of its helicopters during a five-month period from November, 1976, to March, 1977. The first aircraft (Bell 214B1, N90128) crashed on or about November 10, 1976, near Chiriyacu, Peru. This accident is the subject of Civil Action No. CA4–78–54. The second helicopter (Bell 214B–1, N225RM) went down on or about January 26, 1977, near Salmon, Idaho. This wreck is the basis for Civil Action No. CA4–78–110, the only cause of the three that involves personal injury plaintiffs. The remaining suit, Civil Action No. CA4–78–215, is the result of the destruction of the same helicopter that was involved in the first action (Bell 214B–1, N90128). This mishap occurred near Liberty, Washington, on or about March 31, 1977. Rocky Mountain seeks to recover only the economic loss of the three helicopters. In all three cases, plaintiff asserts that it is entitled to recovery under the alternate theories of strict liability and breach of implied warranties of freedom from defects, merchantability and fitness for intended use.

The helicopters in question were purchased from Bell Helicopter Company, a division of Textron, Inc. Bell is incorporated under the laws of the State of Delaware and maintains its principal place of business in Texas. It is engaged in the manufacture, sale and service of helicopters and it does business world-wide.

Defendant Borg-Warner Corporation is incorporated under the laws of Delaware and its principal place of business is in Illinois. Its connection to this situation is a sprag type clutch that it manufactures and sells to Bell. Borg-Warner products were allegedly used in the aircraft involved in this suit. Rocky Mountain sues these two defendants, along with Avco-Lycoming, the manufacturers of the engine used in the helicopters, for the damages to the machines resulting from the respective crashes.

Defendants Bell and Borg-Warner seek to have Rocky Mountain's strict liability and warranty claims dismissed. The disposition of the motions depends upon which of several states' substantive law applies to the facts. The parties have presented a choice of law problem.

*Discussion*

These cases were removed to Federal District Court on the basis of diversity of citizenship. This Court is therefore required to look to state law as a basis for decision. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Included in the body of law that must be examined under the *Erie* doctrine are the forum state's choice of law rules. *Klaxon v. Stentor Electric Co.*, 313 U.S. 187, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). When, as here, a venue transfer is made pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the laws of the state in which the transferor court is located. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). This Court must, therefore, look to the laws of the state of California to determine which state's substantive law should be applied to these motions.

California rejected a strict rule—oriented choice of law methodology in 1967. Through Chief Justice Traynor's opinion in *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), the California Supreme Court adopted what has been referred to as the "governmental interest," or "comparative impairment" approach to the resolution of true conflicts between laws of different states. *Reich v. Purcell, supra*, 63 Cal.Rptr. 31, 34–35, 432 P.2d 727, 730–31, *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723 (1976). Under this type of analysis, the Court, when faced with a conflict must broaden its scope of inquiry to include the interests of the litigants and governments involved. The final choice of controlling state law results from an evaluation of those interests. *See Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal. Rptr. 867, 583 P.2d 721 (1978).

California has exhibited a definite pro-forum tendency in its disposition of problems under the *Reich v. Purcell* analysis. The California Supreme Court favorably endorsed this trend in its decision in *Hurtado v. Superior Court of Sacramento County*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). It stated that:

"generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." 114 Cal.Rptr. 106, 110, 522 P.2d 666, 670 (1974)

It is undisputed that Defendant Bell has "timely invoked the law of a foreign state," namely Texas. Therefore, California law dictates that this Court must "determine the governmental policy of its own and the suggested foreign laws, preparatory to assessing whether [any] or [all] states have an interest in applying their policy to the case." *Id.* 114 Cal.Rptr. at 110, 522 P.2d at 670. For the purposes of organization, the strict liability and warranty claims will be taken up separately in each individual case.

1. *The Strict Liability Claim*

A. CA4–78–54, *Rocky Mountain v. Bell Helicopter*

*Bell Helicopter*

There are five separate governmental entities involved in this action. They are: Peru (the site of the accident), Texas (the principal place of business of Bell Helicopter), Connecticut (the residence and/or principal place of business of Defendant Avco-Lycoming), Utah (the residence and principal place of business of Plaintiff), and California (the forum). The parties agree that Peruvian law does not apply to the disposition of this motion. Further, Defendant Avco did not join in Bell's motion. Therefore, two of the five possible jurisdictions, Peru and Connecticut, have no interest in or connection with this decision. The court is left with an analysis of the laws and the interests of California, Texas and Utah.

■ Texas is the only jurisdiction of the three that has definitively addressed the question of whether strict liability in tort should be a ground for recovery in a suit between contracting commercial entities for purely economic loss to the property that

was the subject of the contract. The Texas Supreme Court, in *Mid Continent Aircraft Corporation v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex.1978), squarely held that losses of the type involved in this case are not recoverable in tort.

"In transactions between a commercial seller and a commercial buyer, when no physical injury has occurred to persons on other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code. [Plaintiff's] cause of action for the damage of the airplane lies in breach of warranty as provided by the Code." *Mid Continent, supra,* 572 S.W.2d 308, 313. *See also Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977).

It is apparently well-settled that the type of economic loss Rocky Mountain seeks to have compensated in this case is not recoverable in Texas under a theory of strict liability in tort. This is undisputed between the parties.

The law of California is unsettled on the issue before this Court. In *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the California Supreme Court stated in dictum that strict liability "should be extended to cover physical injury to Plaintiff's property as well as personal injury." 45 Cal.Rptr. at 24, 403 P.2d at 152. On the basis of this authority, Rocky Mountain asserts that California would allow it to recover under a strict liability theory. If true, this would create a conflict between California and Texas law.

At the hearing on these motions, however, Plaintiff presented to the Court a copy of an opinion handed down by the 9th Circuit on July 24, 1979, that is, as yet, unpublished, which casts doubt upon California's position in this matter. On an appeal from the Central District of California, Judge Hug and Judge Anderson, Circuit Judges, and Judge Solomon (Senior District Judge for the District of Oregon, sitting by designation), affirmed a trial court holding that strict liability under California law is not applicable when an airline sues a manufacturer of an aircraft engine for a defect in the product that caused property damage to the engine itself and to the aircraft on which it was installed. In *Scandinavian Airline System v. United Aircraft Corporation,* 601 F.2d 425 (9th Cir.), Judge Hug stated at page 427 that there was no definitive California Supreme Court holding on the question. The panel upheld the lower court on policy grounds, citing *Seely v. White Motors Co.* as an example of the reliance of California courts on the risk distribution principle as the theoretical underpinning of strict liability.

Judge Hug relies on a California Court of Appeals case for support. In *Kaiser Steel Corp. v. Westinghouse Electric Corp.,* 55 Cal.App.3d 737, 127 Cal.Rptr. 838, the Court stated that "the doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from position of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it." *Id.* at 748, 127 Cal.Rptr. at 845. As the foregoing discussion indicates, therefore, it is problematical whether California allows the type of recovery Plaintiff seeks in the instant case.

The Utah Supreme Court has neither adopted nor failed to adopt the doctrine of strict liability in tort. *See Perkins v. Fit-Well Artificial Limb Co.,* 30 Utah 2d 151, 514 P.2d 811 (1973) *cited in Julander v. Ford Motor Co.,* 488 F.2d 839 (10th Cir. 1973). Federal District Courts in Utah, however, have consistently allowed plaintiffs to bring actions on defective products under the products liability formulation contained in § 402A of the Restatement (Second) of Torts. They have done so in anticipation of what Utah State Courts would probably do if faced with the question. *Rigby v. Beech Aircraft Co.,* 548 F.2d 288 (10th Cir. 1977), *Shuput v. Heublein, Inc.,* 511 F.2d 1104 (10th Cir. 1975), *McGrath v. Wallace Murray Corporation,* 496 F.2d 299 (10th Cir. 1974), *Julander v. Ford Motor Co. supra.*

The Utah Legislature has mentioned the concept of products liability in language describing the purpose of a statute of limitations provision in Chapter 15 of its Judicial Code (Plaintiff's Supplemental Brief, P. 2). Although it is no more than an oblique reference to an increase in judgments arising from product defects, it is at least some indication that the legislature is aware of the problem. That awareness, coupled with the lack of any legislative action on the question, however, perhaps proves too much. Rocky Mountain maintains that the Legislature has implicitly approved the doctrine of strict liability. On the state of the evidence of Utah law before this Court, however, it is equally defensible to infer that Utah lawmakers are aware of the doctrine and, by their inaction, have affirmatively rejected it.

There is apparently no case from State or Federal courts in Utah that specifically addresses the question presented in these motions. On the basis of the authority cited above, however, this Court will assume for the purposes of these motions that § 402A represents the Utah formulation of the doctrine of strict liability.

Having had the law of more than one state involved, this Court must now try to determine the various governmental policies behind those laws so that it can be determined if any or all of the involved states have an interest in having their rules applied to the instant case. *Hurtado v. Superior Ct., supra*, 114 Cal.Rptr. 106, 110, 522 P.2d 666, 670.

Texas is the only state of the three involved in this action that has directly spoken to the question. The Texas Supreme Court reached its decision in the *Mid Continent Aircraft* case, *supra*, in part because of desire to completely separate the theoretical base of contract and strict liability. *Mid Continent Aircraft, supra*, 572 S.W.2d at 312. The Court stated that the Texas Legislature adopted the Uniform Commercial Code, Tex.Bus. & Comm.Code Ann. §§ 1.101–9.507, to serve as a "comprehensive and integrated act to facilitate the continued expansion of commercial prac-

tices." *Id.* 572 S.W.2d at 312. Article 2 of the Code is a complete system of rights and remedies for parties to a sales contract. The expansion of strict liability in tort into a commercial setting would serve to "frustrate the Code's purposes of codifying the law of commercial transactions . . ." *Id.*

It is apparent from the foregoing that Texas has adopted a policy of separation of tort and contract theory in order to protect Texas individuals and corporations from exposure under these facts to liability representing more than actual economic loss. This position has been taken through affirmative legislative and judicial action.

Texas has exhibited other policies in this case. It has positively chosen to simplify and clarify tort and contract law relating to the rights and liabilities of Texas citizens so that they may more accurately gauge the risks involved in contemplated conduct. Further, Texas has recognized that the risk distribution rationale for strict liability is not relevant to transactions between commercial entities.

There are widely disparate California policies involved in the resolution of Defendant's motions. The applicability of one over the other, depends on the resolution of the ambiguity in California's treatment of the strict liability/contract liability problem. As discussed above, it is unclear what a California Court would decide to do under these facts.

Assuming California would allow a commercial plaintiff to recover damages to the subject of a contract under a strict liability theory, a certain set of governmental policies would be manifested. Such a holding would indicate that California wishes to allow its citizens to recover damages for a defective product regardless of whether the parties had dealt with the question of liability for loss of the sales product in their contract. It would also show that California is not interested in promoting the exclusive nature of warranty provisions in sales contracts made by its citizen defendants.

Applying strict liability to contracts of this type would manifest a California desire

to regulate the activities of its manufacturer and sales entities, even in a commercial context. It would also indicate a paternalistic desire to protect contracting parties from any possible inequality of bargaining power with regards to warranty language or disclaimers.

If California follows the holding in the *Scandinavian Airline System* case and the *Kaiser Steel Corp. v. Westinghouse Electric Corp.* case, *supra*, and decides that the doctrine of strict liability is not applicable in actions for purely economic damages to objects exchanged between commercial entities through sales contracts, a wholly different government interest picture would emerge. The policies so manifested would be identical to those discussed above in the consideration of Texas law and there is no need to repeat them here. For the purpose of California's "comparative impairment" approach to choice of law, this Court holds that California would apply strict liability doctrine to contracts between commercial entities.

The most difficult question of all is what Utah would do under these facts. Even with the assumption that § 402A is the law of that state, there is no way to determine whether Utah Courts would allow Rocky Mountain to recover under strict liability. An inherently nebulous method for resolving choice of law questions takes on another layer of uncertainty. Faced with the lack of any guidance from the Legislature and Supreme Court of Utah, this Court must assume that that state has no policy on the question raised by these motions. Utah does presumably have a general paternalistic interest in seeing its injured citizens compensated.

■ Having examined the laws of the states involved, the Court must determine whether any or all of those jurisdictions "have an interest in applying their policy to the case." *Hurtado v. Superior Ct., supra,* 114 Cal.Rptr. at 110, 522 P.2d at 670. Under these facts, the law of Texas should be applied to the question recovery under the doctrine of strict liability.

California's connection with this particular suit is tenuous at best; none of the parties are California citizens, the relationship between the parties had no connection with that state, and the accident from which the claim arose did not occur there. California's status as the original forum for the action is the only basis for arguing that her laws should be applied.

The Supreme Court of California spoke of the interests accompanying the position of forum state as being entitled to great weight. The importance of that station has been more clearly defined in subsequent opinions. As in the present case, when there is a true conflict between the laws of the forum and a foreign state, it "should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied." *Bernhard v. Harrah's Club, supra,* 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723, cited in *Offshore Rental Co. v. Continental Oil Co., supra,* 148 Cal. Rptr. 867, 872, 583 P.2d 721, 726. California's interest in upholding its own rule is not involved here. None of the parties are California citizens, so the desire to permit California plaintiffs to recover is not involved here. The contract was not entered into in California, so that state has no interest in protecting the expectation of the parties under it. It also has no real need to provide for the rights and liabilities of the parties in this case because to do so will have no effect on a California citizen. Finally, there is no regulatory function to be furthered here through the use of California law. The only interest California has in this case is the lingering desire to apply its own law because of its familiarity. This interest of the forum *qua* forum is similar in kind to the insistence by states that they will not utilize the procedural rules of a foreign jurisdiction. *See* Rest.2d of Conflict of Laws §. 122 comment a. The weakness of Plaintiff's position on this point is underscored by the fact that a California court will not be called upon to utilize foreign law because the case has been transferred. Therefore, although that interest remains, as it must under *Van Dusen v. Barrack, supra,* it is not a compelling one

under these facts. In sum, no California interest would be significantly impaired if foreign rule of law were used. This is especially true since California law on the subject of concurrent tort and contract liability appears to be in the midst of a change. *See Scandinavian Airlines Systems, supra,* and *Kaiser Steel Corp. v. Westinghouse Electric Corp., supra.*

Texas has recently and emphatically spoken to the issue before the court. It has rejected strict liability as grounds for recovery in actions between commercial entitles for economic losses to goods that were the subject of contracts. Texas has adopted this position regarding tort and contract law interplay through State Supreme Court interpretation of a positive legislative action. *See Mid Continent Aircraft Co. v. Curry County Spraying Service, supra, Nobility Homes, Inc. v. Shivers, supra.* This theoretical stance, far from being "attenuated and anachronistic," *Offshore Rental Co. v. Continental Oil Co., supra,* 148 Cal. Rptr. 867, 872, 583 P.2d 721, 726, is newly and positively formulated, and the uncertainty of the California courts on the subject supports the possible conclusion that Texas is in the vanguard of changing policy instead of being a lone holdout, as plaintiff urges. *See* Freund, *Chief Justice Stone and the Conflict of Laws,* 59 Harv.L.Rev. 1210, 1216 (1946).

It is clear that the policies behind the Texas rule are very pertinent to this case. Defendant Bell is a Texas citizen, the contract (although there is some dispute on this point) may have been entered into in Texas, the aircraft contracted for were manufactured and certified in Texas, and plaintiff took delivery of the helicopters in Texas. Thus, most of the events Texas intended to impact through its policy change took place in the state. To apply California law to these facts would severely impair the interests of Texas. Thus, Texas law, as opposed to the law of California, should be applied to these facts.

This conclusion is supported by scholarly commentary. Professor Robert A. Sedler, cited approvingly by the California Supreme Court in *Bernhard v. Harrah's Club, supra,* 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723, would characterize the conflict between Texas and California a false conflict. In a situation where two states law's disagree, a problem arises only when both states have real, as opposed to hypothetical interests at stake. *Id.* Sedler in *Symposium, Conflict of Laws Roundtable,* 49 Tex.L. Rev. 211–245, at 225 (1971). California's interest in the instant case can only be characterized as of the latter type. There are no California parties involved and no California citizen will be affected by this Court's decision. Under these circumstances, Sedler states that "[W]hen one state has a real interest and the interest of another state is only hypothetical, the conflict . . 'is readily avoidable,' and I would apply the law of the state with the real interest." *Id.* That state is either Texas or Utah under the facts of this case and California law should not be applied.

The comparative impairment approach to conflicts of laws problems also requires that Texas law prevail over the law of Utah. The latter state has only indirectly approved of the doctrine of strict liability under § 402A and it has expressed no opinion whatsoever on the interplay of tort and contract liability. Utah presumably has an interest in upholding the expectations of parties as expressed in contracts, and any compensatory interest Utah has regarding its citizen plaintiffs may be satisfied in this case by Rocky Mountain's cause of action in negligence. Because Utah has expressed no interest or policy concerning the strict liability claim and because that state's recognizable interests would not be substantially impaired by the case of Texas law in this case, there is no real reason to hold that Utah law controls. Texas, on the other hand, as discussed above, would have its policies frustrated greatly if Utah law were applied to these facts.

In sum, this Court finds that, under California choice of law rules, the law of the State of Texas should be applied to the motion before the Court in Civil Action No. CA–4–78–54. The Court is of the opinion

that Rocky Mountain has no cause of action in strict liability under Texas law and, therefore, Bell's motion to dismiss Plaintiff's strict liability claim should be granted.

B. CA–4–78–110, *James, et al. v. Bell Helicopter, et al.*

There are seven states involved in this suit, only five of which have interests in the motion currently before the Court. Those five states are: Idaho (the site of the accident), Utah (residence of Rocky Mountain), Texas (residence of Bell), Illinois (residence of Borg-Warner, a party defendant who joins Bell in this motion only), and California (the original forum and residence of one of the personal injury plaintiffs in this suit).

■ The laws of California, Texas and Utah have been examined above. On the basis of the discussion in the foregoing sections, this Court concludes that the laws of California and Utah must yield to the Texas rule of decision on these motions. The Court must now decide whether the presence of Illinois and Idaho as interested states has an impact on the choice of law decision in the preceding section. Accepting as true all of Plaintiff's allegations concerning the laws of those jurisdictions, this Court is of the opinion that Texas law must also apply to these facts.

Rocky Mountain states that Idaho has not spoken to the issue presented in these motions. It has however, adopted § 402A of the Restatement 2d of Torts. *Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1974). Therefore, although it recognizes strict liability in tort, Idaho has not attempted to sort out the entanglement between tort and contract theory presented by this case.

Illinois has not spoken to the precise point before the Court. Plaintiff cites one case in support of its contention that Illinois would allow strict liability recovery in this action. In a factual setting somewhat different from the one at bar, the Illinois Appellate Court in *Koplin & Co. v. Chrysler Corp.*, 49 Ill.App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 (1977) held that "tort theory does not extend to permit recovery against the manufacturer for solely 'economic losses' absent property damage or personal injury form the use of the product. Our decision herein is limited to those products liability cases which seek recovery solely for economic losses based upon negligence and strict liability theories." 7 Ill.Dec. at 120, 364 N.E.2d at 107. The economic losses complained of in the *Koplin* case did not involve actual damage to the product (air conditioners) or injury to other property resulting from their use but were instead replacement and repair costs to the units themselves. The language quoted above does track § 402A rather closely. For the purpose of this opinion, however, it makes no difference how Illinois would resolve the question. This Court will therefore assume that Illinois would allow recovery in strict liability under these facts.

Under the comparative impairment analysis, Texas law would prevail over the laws of Idaho. Idaho has an interest in this case analogous to that of California. Its only connection with the case is that it happened to be the site of the accident. None of the parties are Idaho citizens and no domiciliary of that state will be affected by the decision in these motions. Therefore, Idaho's interest is largely hypothetical and whatever policies that the state may have on the question before the Court will suffer no impairment if Texas law is applied. Texas, as discussed above, will have its policy decisions directly frustrated if Idaho law is used to resolve the instant dispute.

Illinois must also yield to Texas law under comparative impairment principles. Illinois is interested in the decision on this motion because a party defendant is an Illinois citizen and it has several interests with regard to its citizen defendants. It has an interest in regulating the safety of products manufactured within its borders. It presumably has an interest in protecting its corporate citizens from excessive liability. Through the adoption of Illinois version of the U.C.C., that state's legislature has shown a desire to provide a framework for the commercial rights and liabilities of its citizens.

The real policies of Illinois in this case must be those that seek to protect citizen defendants from excessive liability and those that seek to regulate the conduct of in-state manufacturers. Both of those policies will be furthered here under Texas law. Borg-Warner, because of its continuing exposure to liability under negligence theory, will keep a watchful eye on its design and manufacturing processes. Assuming Illinois would allow recovery in strict liability here, its presumed protective interest in its citizen defendants will be enhanced by the application of Texas law.

■ Texas, however, will suffer no impairment of its legislative preferences if Texas law is not applied to the suit between Illinois and Utah citizens. At this point, therefore, based on analyses of the law submitted by Plaintiff, this Court is faced with choosing between the laws of two foreign states using the choice of law method of a third. An analysis of the situation under California's comparative impairment approach reveals that Illinois law should apply to the contest between Rocky Mountain and Borg-Warner.

■ As discussed above, neither the Utah Courts or the State Legislature have spoken on the subject of recovery under strict liability for purely economic loss. Illinois, however, has, through its Court of Appeals, expressly held that "tort theory [negligence and strict liability] does not extend to permit recovery against a manufacturer for solely 'economic losses' absent property damage or personal injury from the use of the product." *Koplin v. Chrysler Corp., supra*, 7 Ill.Dec. 113, 120, 364 N.E.2d 100, 107. The precise definition of "economic loss" is crucial to the decision on this point. If those words include loss due to damage to the product itself, an action will lie in strict liability. If, on the other hand, that phrase includes only damage to property other than the product, Illinois would allow tort recovery under these facts. The Court in *Koplin*, stated with approval that economic loss "has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent

loss of profits—without any claim of personal injury or damage to *other property* . . .' Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966)" (emphasis added) *Koplin, supra*, 7 Ill.Dec. at 116, 364 N.E.2d at 103. The phrasing of this definition indicates that the Court in *Koplin* intended to allow tort recovery only for property other than the product damaged by the product. Therefore, under these facts, it is apparent that Illinois would not allow Rocky Mountain action in strict liability. *See also, Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362, 219 N.E.2d 726 (1966).

Having thus established that Illinois has a definite policy on the question of recovery under strict liability, the disposition of the choice of law question becomes clear. Illinois' interest would be impaired to a greater degree that Utah's would be simply because Utah has no express policy on this point. There is, therefore, a false conflict between the laws of the two states. Sedler, *supra*; *Bernhard v. Harrah's Club, supra*. When, as here, one of the two competing states has taken no position on a point of law, it cannot be said to have a legitimate interest in having its law applied to the disposition of a question involving that point. This is especially true when the second state in this case, Illinois, has expressly adopted a rule that would dispose of the parties' contentions. Currie, Selected Essays on the Conflict of Laws 189 (1963). Utah's interest is, in a sense, hypothetical because, although plaintiff is a Utah citizen, this Court can only speculate as to what a Utah Court might decide about the availability of strict liability under these facts. *See* Sedler, *supra*. Therefore, although there are governmental interests on both sides of the controversy, there is no real conflict and the law of the state that has directly addressed the question should be deferred to. See e. g. *Reich v. Purcell, supra, Offshore Rental Co. v. Continental Oil Co., supra, Hurtado v. Superior Court, supra*. Therefore, Illinois law should prevail and Borg-Warner's motion should be granted.

C. CA–4–78–215, *Snow, et al. v. Bell Helicopter, et al.*

■ There are six states involved in this suit, only four of which have interests in Bell's motion. Those four states are: Washington (the site of the accident), Utah (residence of Rocky Mountain), Texas (residence of Bell), and California (the original forum). The relative interests of Texas, Utah and California have been examined at length above and that discussion and the holdings are incorporated here as to those states. The Court must now determine if the presence of Washington interests impacts the decisions reached regarding the other three states. This Court is of the opinion that it does not and that Texas law should apply here as well. Therefore, Bell's motion to dismiss should be granted.

Washington was the site of the accident. There are no Washington parties involved in this motion, however. Therefore Washington's interest is hypothetical because no policy of that state will be furthered through the application of its law to these facts. *Bernhard v. Harrah's Club, supra*; Sedler *supra*. Therefore, for the reasons discussed with regard to the interests of Idaho in the preceding section, this Court holds that the laws of the State of Washington are not relevant to the disposition of Bell's motion in this case.

### 2. *The Warranty Claim*

The contract between the parties contains the following warranty language:

"Warranty: BELL HELICOPTER COMPANY hereby warrants to the original purchaser only each new helicopter and part thereof sold by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to replacing or repairing such part at its factory with the charges prorated for hours of use against the established life of the part of 2400 hours, whichever is the lesser, if such part shall have been returned to it with transportation charges prepaid within 500 hours of operation or six months, whichever shall first occur, after delivery of such part to the original purchaser, and which its examination shall disclose to its satisfaction to have been thus defective; THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, AND THIS WARRANTY IS THE ONLY WARRANTY MADE BY BELL HELICOPTER COMPANY. The obligations of BELL HELICOPTER COMPANY under this warranty are limited to the repair of helicopter parts as provided herein and liability is excluded for incidental or consequential damages, including without limitation, damage to the helicopter or other property, and costs or expenses for commercial losses or lost profits due to loss of use or ground of helicopters or otherwise.

"BELL HELICOPTER COMPANY makes no warranty whatever with respect to engines, tires, wheels, ignition apparatus, starting devices, generators, batteries, instruments or other trade accessories, manufactured by others except BELL assigns to the BELL purchaser the manufacturer's warranty."

Bell Helicopter contends that said language is sufficient, under the *Tex.Bus. and Comm.Code*, § 2.316, to eliminate any warranties implied by law. *See Mid-Continent Aircraft Corp. v. Curry County Spraying Service*, 572 S.W.2d 308 (Tex.1978), *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377 (1975), *Emmons v. Durable Mobile Homes Inc.*, 521 S.W.2d 153 (Tex. Civ.App. Dallas 1975 writ ref'd n. r. e.).

■ There has been no case cited to this Court whereby a Utah tribunal has confronted the language contained in that state's version of the U.C.C. Utah Code § 70A–2–316. This Court notices, however, that § 2.316 of the U.C.C. as enacted by the State of Utah is identical in language to its Texas Counterpart. *See* 1 Anderson on the Uniform Commercial Code 669–676 (2d ed. 1970).

This Court must therefore assume that Utah would construe its statute in a manner substantially the same as the courts in Texas. Under the authority of Texas cases cited above, this Court finds that the language contained in the contract between the parties is sufficient to exclude all implied warranties, including warranties of merchantability and fitness for a particular purpose.

There is, however, no evidence in the record concerning any warranty given by Defendant Borg-Warner covering its clutch assembly. No contract between Borg-Warner and Bell Helicopter has been introduced nor has there been any evidence introduced as to the existence or nonexistence of any contractual relationship between Borg-Warner and Rocky Mountain Helicopters, Inc. It is thus impossible at this time to rule on Defendants' Motion to Dismiss Plaintiff's Strict Liability Claim as it pertains to Defendant Borg-Warner. Therefore, this Court holds that Defendants Bell Helicopter and Borg-Warner's Motion to Dismiss Plaintiff's Strict Liability Claim should be in all respects granted. Further, the Court is of the opinion that Defendant Bell Helicopter's Motion to Dismiss Plaintiff's Breach of Warranty Claim should be granted and that Defendant Borg-Warner's Motion to Dismiss Plaintiff's Breach of Warranty Claim should be neither granted or denied, but should be carried along until such time as the record is such that a disposition of said motion can be made.

IT IS SO ORDERED.