[Civ. No. 22213. Third Dist. July 18, 1984.]

SACRAMENTO REGIONAL TRANSIT DISTRICT,
Plaintiff and Appellant, v.
GRUMMAN FLXIBLE, Defendant and Respondent.

## COUNSEL

Phillip M. Cunningham and Mark W. Gilbert for Plaintiff and Appellant.

Porter, Scott, Weiberg & Delehant, Nian S. Roberts II and Terence J. Cassidy for Defendant and Respondent.

## OPINION

**SIMS, J.**—In this case we hold that a complaint filed by a plaintiff who is a merchant (Cal. U. Com. Code, § 2104, subd. (1)) fails to state a tort cause of action for strict liability or negligence against a manufacturer of a product purchased by the merchant where the only injury alleged is the cost of repair of a defect in the product.

■ ■■ ■ FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff operates a fleet of busses in Sacramento for the purpose of public mass transportation. Defendant is the successor of an original bus manufacturer.

---

[1]Our factual summary is taken from the allegations of the complaint, the truth of which defendant admitted by general demurrer. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 919 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Younan* v. *Equifax Inc.* (1980) 111 Cal.App.3d 498, 514 [169 Cal.Rptr. 478].)

Sometime in the fall of 1974 plaintiff issued a request for proposal regarding the purchase of busses. Defendant, through its predecessor, was the successful bidder. In October 1975 defendant delivered to plaintiff 103 new busses, which were accompanied by defendant manufacturer's standard written warranty containing certain terms, conditions, and limitations not here applicable.

On April 17, 1980, plaintiff discovered a broken fuel tank support during routine maintenance on one of the busses manufactured by defendant. Further inspection of all the busses manufactured by defendant revealed that at least 26 of the 103 had the same or similar damage, i.e., cracked fuel tank supports. As a result of further inspection plaintiff determined that all the busses it purchased from defendant would likely suffer the same type of damage unless certain remedial repairs were undertaken. In addition, these inspections revealed damage of a similar nature (cracked or cracking component parts) to other parts of other busses.[2]

Subsequently, with the advice and assistance of defendant's employees, damage to the 26 disabled busses was repaired and prophylactic repairs were made to the remainder of the busses manufactured by defendant. All 103 busses were eventually restored to service by plaintiff.

Plaintiff filed this action for damages on November 4, 1980. Defendant demurred on May 3, 1982, contending plaintiff failed to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Following a hearing, the court sustained the demurrer and entered judgment of dismissal on July 6, 1982.

Plaintiff appeals contending the court erred in sustaining the demurrer because the complaint states a cause of action in tort for products liability and negligence. Plaintiff concedes the contractual warranty had long expired when the defects were discovered.

---

[2]Plaintiff's first and second causes of action seek recovery upon theories of products liability and negligence, respectively, regarding defects in the fuel tank supports of the busses described above. Plaintiff's third and fourth causes of action seek recovery upon theories of products liability and negligence regarding structural defects in the undercarriage battery frame area of certain other busses purchased from defendant in 1972. Plaintiff confines its statement of the facts and argument to its first two causes of action, providing only minimal reference to its second two causes of action. We assume plaintiff believes that this court's decision regarding its first two causes of action will be dispositive of the issues raised by plaintiff's second two causes of action. We believe the issues raised are identical; our discussion and conclusions regarding plaintiff's first two causes of action apply with equal force to plaintiff's second two causes of action.

DISCUSSION

I

In response to plaintiff's contention that it adequately pled a cause of action for products liability we briefly review the authorities which define the contours of a products liability action.

■■■ "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

"Subsequent cases have expanded the scope of the *Greenman* doctrine by imposing strict liability on retail dealers [citation]; wholesale and retail distributors [citation]; home builders [citations]; bailors and lessors of personal property [citations]; and licensors of chattels [citation]. The standard of strict liability has been held to apply to a defect in design as well as a defect in manufacture [citations] and extends not only to actual consumers or users but to any human being to whom an injury from the defect is reasonably foreseeable. [Citations.]" (*Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1026 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].)

Liability is imposed not only where the defective product causes personal injury, but also where the defective product causes physical damage to property. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 19 [45 Cal.Rptr. 17, 403 P.2d 145]; *International Knights of Wine, Inc.* v. *Ball Corp.* (1980) 110 Cal.App.3d 1001, 1005 [168 Cal.Rptr. 301]; *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, 746, fn. 5 [127 Cal.Rptr. 838]; *Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639, 649 [55 Cal.Rptr. 94].) The damaged property may consist of the product itself. (See *Seely* v. *White Motor Co., supra,* 63 Cal.2d at p. 19; *International Knights of Wine, Inc.* v. *Ball Corp., supra,* 110 Cal.App.3d at p. 1005; *Gherna* v. *Ford Motor Co., supra,* 246 Cal.App.2d at p. 649.)

■■■ However, where damage consists solely of "economic losses," recovery on a theory of products liability is precluded. (*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Seely* v. *White Motor Co., supra,* 63 Cal.2d at pp. 18-19; *Pisano* v. *American Leasing* (1983) 146 Cal.App.3d 194, 196-197 [194 Cal.Rptr. 77]; *International Knights of Wine, Inc.* v. *Ball Corp., supra,* 110 Cal.App.3d at p. 1008 (conc. and dis. opn. of Fleming, J.); *Rodrigues* v. *Campbell Industries* (1978) 87 Cal.App.3d 494, 498 [151 Cal.Rptr. 90]; *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp., supra,* 55 Cal.App.3d at p. 746, fn. 5;

*Anthony* v. *Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 447 [102 Cal.Rptr. 113]; see *Jones & Laughlin Steel* v. *Johns-Manville Sales* (3rd Cir. 1980) 626 F.2d 280, 287, fn. 13, citing authorities; *Clark* v. *International Harvester Co.* (Idaho (1978) 99 Idaho 326 [581 P.2d 784, 791], citing authorities.)

We believe the line between physical injury to property and economic loss reflects the line of demarcation between tort theory and contract theory. (*Alfred N. Koplin & Co.* v. *Chrysler Corp.* (1977) 49 Ill.App.3d 194 [364 N.E.2d 100, 102].) " 'Economic' loss or harm has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . .' " (*Id.,* at p. 103, quoting, Note, *Economic Loss in Products Liability Jurisprudence* (1966) 66 Colum.L.Rev. 917, 918; see also *Star Furniture Co.* v. *Pulaski Furniture Co.* (W.Va. 1982) 297 S.E.2d 854, 859.)

██ Plaintiff failed to allege physical injury to its property apart from the manifestation of the defect itself in the busses.[3] ██ The rule imposing strict liability in tort for damage to property presupposes (1) a defect and (2) *further* damage to plaintiff's property caused by the defect. When the defect and the damage are one and the same, the defect may not be considered to have caused physical injury. (*National Crane Corp.* v. *Ohio Steel Tube Co.* (1983) 213 Neb. 782 [332 N.W.2d 39, 43-44].) ██ The expenses of repair plaintiff has incurred, and will incur in the future, are purely economic damages. (*Ibid.;* see *Star Furniture Co.* v. *Pulaski Furniture Co., supra,* 297 S.E.2d at p. 859-860; *Alfred N. Koplin & Co.* v. *Chrysler Corp., supra,* 364 N.E.2d at p. 107; *Chrysler Corp.* v. *Taylor* (1977) 141 Ga.App. 671 [234 S.E.2d 123, 124].)

██ We believe a contrary conclusion in the circumstances of this case would improperly invade rules of law adopted by the Legislature in the California Uniform Commercial Code.[4] In that code, " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary

---

[3]Plaintiff has pled that it purchased busses from defendant, that the busses are latently defective in that the fuel tank support members are prone to cracking; that the fuel tank support members of certain of its busses are already cracked; that it has been damaged by the cost of materials and labor necessary to correct the defect; that it has been damaged by the loss of use of those busses while they were being repaired; and that it will, in the future, be damaged by the cost of materials and labor to correct the latent defect in the remaining busses and the consequent loss of use of those busses.

[4]All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

who by his occupation holds himself out as having such knowledge or skill." (§ 2104, subd. (1).) The drafters of the Uniform Commercial Code wrote, "This article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer. It thus adopts a policy of expressly stating rules applicable 'between merchants' and 'as against a merchant', wherever they are needed instead of making them depend upon the circumstances of each case . . . ." (Official comment to § 2104; see generally Lattin, *Uniform Commercial Code, Article 2 on Sales: Some Observations on Four Fundamentals* (1965) 16 Hastings L.J. 551, 552-561.)

Here, the facts pleaded in the complaint demonstrate that, as a transit district, plaintiff had knowledge and skill peculiar to the goods (busses) involved in the transaction. Plaintiff, like defendant, was therefore clearly a "merchant" as defined by section 2104. The Uniform Commercial Code regulated the various aspects of plaintiff's purchase of busses from defendant, including liability for defects based on express and implied warranties. (See, e.g., §§ 2303, 2313, 2314, 2315; *Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 957-960 [199 Cal.Rptr. 789]; see generally Lattin, *op. cit. supra.*) We see no reason why we should apply tort law to govern plaintiff's commercial relations with another merchant. "The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries." (*Seely* v. *White Motor Co., supra,* 63 Cal.2d at p. 15.)

*Kaiser Steel Corp.* v. *Westinghouse Elec. Corp., supra,* 55 Cal.App.3d 737 also supports this view. There, Westinghouse manufactured and delivered to Kaiser an electrical generator built to Kaiser's specifications. Defects in welding of rivets caused the generator to self-destruct. Loss of the generator caused a portion of Kaiser's manufacturing plant to shut down. (P. 742.)

Upholding a nonsuit granted as to Kaiser's tort cause of action based on products liability, the court said: "Because the Legislature through the adoption of the Uniform Commercial Code has defined the precise conditions to, and extent of, liability for defective products in situations covered by the code, we must not, in deference to the Legislature, create rules of liability which displace those of the Uniform Commercial Code. (Titus, *Restatement (Second) of Torts Section 402 A and the Uniform Commercial Code* (1970) 22 Stan.L.Rev. 713, 755.) The rule of strict liability for defective products is an example of necessary paternalism judicially shifting risk of loss by application of tort doctrine because California's statutory

scheme fails to adequately cover the situation. Judicial paternalism is to loss shifting what garlic is to a stew—sometimes necessary to give full flavor to statutory law, always distinctly noticeable in its result, overwhelmingly counterproductive if excessive, and never an end in itself." (*Kaiser Steel Corp., supra,* at p. 747.)

Plaintiff relies heavily on *Gherna v. Ford Motor Co., supra,* 246 Cal.App.2d 639 and *International Knights of Wine, Inc. v. Ball Corp., supra,* 110 Cal.App.3d 1001.

The plaintiff in *Gherna* appealed from a judgment of nonsuit entered at the close of plaintiff's presentation of evidence (Code Civ. Proc., § 581c, subd. (a)). (*Gherna v. Ford Motor Co., supra,* 246 Cal.App.2d at p. 644.) Plaintiff attempted to prove that defective wiring or a design defect consisting of the juxtaposition of the transmission fluid dipstick and the exhaust manifold caused a fire which damaged plaintiff's automobile.

On appeal, the court held that the evidence was sufficient (as to both defects) to avoid a nonsuit. (*Id.,* at p. 650.) The *Gherna* court expressly held that products liability affords a remedy to one whose property has been physically injured and impliedly held that the remedy is available where the property injured is the defective product. (*Id.,* at pp. 649-650.)

*Gherna* is distinguishable from the instant case in that the defects in the product were claimed to have caused different and further damage to non-defective portions of the product. In the instant case the only injury to the product is the defect itself. Moreover, the plaintiff in *Gherna* was not a merchant as defined by the Uniform Commercial Code.

In *International Knights of Wine, Inc. v. Ball Corp., supra,* 110 Cal.App.3d 1001 (hereafter *IKW*), plaintiff appealed from a judgment on the pleadings. Plaintiff had alleged it purchased wine from defendant Nave Pierson Winery, Inc., to be marketed under plaintiff's label and trade name. Subsequently, plaintiff discovered that the wine was damaged and unmarketable because of faulty metal caps which sealed the bottles. Plaintiff sued a number of defendants alleging negligence, breach of warranties and products liability. The defendants were described by the trial court in the following terms: " 'Nave Pierson Winery produced wine. It purchased metal caps for wine bottles from Latchford [Package Company], which purchased from Ball [Corporation], the manufacturer of the caps. Ball had sent the metal used in the caps to Wester [Metal Decorating Co.] for coating before it was made into caps. Biner-Ellison [Manufacturing Co.] sold the capping equipment which was manufactured by Resina [Manufacturing Co.] to Nave.' " (*Id.,* at p. 1004.)

All defendants moved for judgment on the pleadings as to the products liability cause of action; the trial court granted the motion. (*Ibid.*)

The author of the lead opinion in *IKW* (Roth, P. J.) held that (1) the proper test of the inapplicability of the doctrine of products liability in commercial transactions is confined to the single issue of whether "the party seeking to invoke the doctrine *could have* negotiated so as to remove from himself the risk of loss from defective products" (*id.*, at p. 1007, fn. 1, original italics); (2) the pleadings did not disclose sufficient facts to resolve this issue (*id.*, at p. 1007); and (3) the issue of damages need not be addressed to reach a decision in the case. (*Ibid.*)

Justice Fleming concurred and dissented. He "agree[d] that plaintiff has pleaded a tort cause of action in strict liability against noncontracting parties for property damages, but [Justice Fleming took] the view that the relative size and bargaining power of plaintiff vis-a-vis the noncontracting parties are inconsequential. For that reason the trial court erred in giving the supplier-defendants judgment on the pleadings on the cause of action for strict liability." (*Id.*, at p. 1008.)

Justice Fleming dissented on the issue of damages opining that "plaintiff's damages in its tort action in strict liability against noncontracting parties (as contrasted with its negligence action) are limited to property losses (the wine) and may not include such other economic losses or loss of profits, loss of business opportunity, loss of goodwill, and the like." (*Ibid.*)

Justice Beach concurred in the lead opinion regarding the pleading issue and joined Justice Fleming's dissent on the issue of damages. (*Id.*, at p. 1009.)

*IKW* is distinguishable from the instant case in that it was alleged " 'that due to defective caps or defective application of caps the wine became unsusable and economic loss was incurred.' " (*Id.*, at p. 1004.) This allegation may be construed to allege physical injury to plaintiff's wine caused by defective caps. To the extent that *IKW* may stand for the proposition that a merchant may sue in products liability for physical injury to its property where that injury consists of nothing more than the product defect upon which liability is founded, we decline to follow it.

Plaintiff asserts it is anomalous to allow a consumer to sue on a theory of products liability when physical injury to a person has occurred but not when a defect is discovered that will ultimately cause the physical injury. In the circumstances of this case, we disagree.

Plaintiff's argument assumes a purchaser has discovered a defect in the product. The viable policy question is whether imposition of liability in tort

is reasonably necessary to prevent use of the known defective product with its consequent potential for causing injury to people. We conclude imposition of tort liability on the manufacturer is unnecessary to prevent use of a defective product purchased by one who is a "merchant" under the Uniform Commercial Code. As a merchant having peculiar knowledge of the goods, there is no question but that plaintiff would (and did) perceive the full potential for injury to persons that could occur if the defective product was put to its ordinary use. We will not assume a merchant who discovers a defect with the potential for causing injury will place the defective product in use unless the product's manufacturer bears the cost of repairs. Nothing in reason or experience supports such an assumption. Rather, the more reasonable view is that the merchant will repair the product as plaintiff did here. Since the question is not whether a defective product will be put in use, but rather who should bear the economic cost of repairs, we see no reason to disturb the allocation of those costs agreed to by knowledgeable merchants.

## II

Plaintiff also contends it has properly pled an action in negligence against defendant. We disagree. ██ "[I]n actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. [Citations.]" (*Seely* v. *White Motor Co.*, supra, 63 Cal.2d at p. 18.) As we have noted, the cost of repair of a defect in a manufactured product constitutes economic loss; that loss is not recoverable in a tort action based on negligence. (*National Crane Corp.* v. *Ohio Steel Tube Co.*, supra, 332 N.W.2d at p. 44; *Chrysler Corp.* v. *Taylor*, supra, 234 S.E.2d at p. 124; *Alfred N. Koplin & Co.* v. *Chrysler Corp.*, supra, 364 N.E.2d at p. 107.) This rule is necessary so that the Uniform Commercial Code, governing commercial transactions, is not completely subsumed by the law of tort. (See *Alfred N. Koplin*, supra, 364 N.E.2d at p. 107; Rabin & Grossman, *Defective Products or Realty Causing Economic Loss: Toward a Unified Theory of Recovery* (1981) 12 Sw.U.L.Rev. 4, 16.) Moreover, "judicial expansion of negligence law to cover purely economic losses would only add more confusion in an area already plagued with overlapping and conflicting theories of recovery." (*Clark* v. *International Harvester Co.*, supra, 581 P.2d at p. 794.)

A similar issue was addressed in *Fentress* v. *Van Etta Motors* (1958) 157 Cal.App.2d Supp. 863 [323 P.2d 227], where the trial court had sustained a general demurrer to plaintiff's complaint seeking recovery for damages to his car caused by a crash resulting from negligently manufactured brakes. The court asked, "Will an action lie against the manufacturer of an article which, if negligently made, is likely to produce injury to person or property, for damages resulting from an accident caused by the negligence, where the

damages are confined to destruction or harm to the article itself?" (*Id.*, at p. 864.) The *Fentress* court answered yes, with four conditions: (1) negligence must be proved; (2) the product must be of the type which, if not manufactured correctly, is reasonably certain to cause harm to persons or property; (3) an accident must have resulted; and (4) "the accident must be a casualty involving some violence or collision with external objects, not a mere marked deterioration, or even a complete ruin brought about by internal defect." (*Id.*, at pp. 865-866, disapproved on another point in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 29-30 [27 Cal.Rptr. 689].)[5]

We need not reach the question whether an accident involving violence or collision is always a prerequisite for an action for damage to a negligently manufactured product. *Fentress* stands for the proposition that the negligent act of defendant must cause some different and further injury to plaintiff's property apart from the physical defect in the product caused by the negligence.[6] Here, any negligence by defendant caused only the physical defect for which repair costs are sought.

In *Pisano* v. *American Leasing, supra,* 146 Cal.App.3d 194, the court held that a cabinet maker could pursue a cause of action to recover economic damages caused by the respective negligence of the manufacturer, supplier, and lessor of a sanding machine that operated defectively, thereby damaging cabinets and causing him to lose business. *Pisano's* analysis is derived from *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60], where our Supreme Court permitted a restaurant owner to sue a contractor for lost profits which resulted from the contractor's negligent failure to complete remodeling work within a reasonable time.

We note that transactions involving the construction or modification of structures (such as that involved in *J'Aire*) are generally not governed by the Uniform Commercial Code, which applies to transactions involving movable "goods." (See §§ 2102, 2105, 2107; see also fn. 5, *ante*.) Consequently, judicial creation of a tort remedy for economic loss caused by

---

[5]*Sabella* v. *Wisler, supra,* 59 Cal.2d 21, is inapplicable for a variety of reasons. There, the Supreme Court held purchasers of a home could sue the builder for damages caused by negligent construction. (P. 28.) However, as the court itself acknowledged, the defendant was a contractor and not a conventional manufacturer of goods. (P. 30.) Consequently, the Uniform Commercial Code did not apply and no potential conflict was presented between that code and tort law. Moreover, the construction defect was an improperly compacted lot. (P. 24.) Plaintiffs recovered judgment for damages caused when portions of the house itself settled. (Pp. 26-27.) Consequently, damages were not awarded for the repair of the negligent defect itself.

[6]Plaintiff argues the requirement of accident and injury rests upon the unsupportable distinction between the buyer who discovers the defect before injury and the buyer who does not. In part I, *ante,* we discussed this argument as it applied to a products liability action. We believe the same policy reasons compel rejection of plaintiff's argument based on negligence in the circumstances of this case in which the purchaser of a product is a merchant.

the negligence of a builder of a structure poses no conflict with the law of sales as set forth in the Uniform Commercial Code. We therefore question whether *Pisano's* reliance on *J'Aire* was well placed. Nonetheless, for present purposes, it is sufficient that we find *Pisano* distinguishable. Nothing in *Pisano* indicates the plaintiff cabinet maker had special knowledge of the mechanical sander sufficient to make him a "merchant" with respect to the transactions in question. (See § 2104.) Here, where merchants are involved, we conclude that the Uniform Commercial Code, and not tort law, should govern their commercial affairs, including any economic loss caused by a defective product.

The trial court properly sustained the demurrer.

DISPOSITION

The judgment is affirmed.

Evans, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied August 13, 1984, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied September 12, 1984.