Opinion
 

 MCDONALD, J.
 

 Shell Oil Company (Shell) appeals 14 of 34 judgments entered in an action by 34 homeowners against Shell and others including Western Plastic and Rubber Company (Western) for defective polybutylene (PB) pipes used in the construction of the plumbing systems in their homes. Shell contends the court erred by allowing the jury to determine Shell was liable for negligence even though the PB pipes in 14 homes did not leak or otherwise fail. Shell further contends the court erred by ruling that economic loss alone can support a tort cause of action.
 
 [1]
 

 Western was found strictly liable to the 34 homeowners, but it appeals only the postjudgment order awarding homeowners their costs as prevailing parties under Code of Civil Procedure
 
 [2]
 
 section 1032. Western contends it was the section 1032 prevailing party because the homeowners ultimately recovered no net monetary award after settlement amounts with other defendants were credited against the jury’s damage awards.
 

 We reverse the 14 judgments against Shell from which Shell appeals and affirm the order awarding the 34 homeowners their section 1032 costs
 
 *207
 
 against Western. Western has not appealed the judgments against it in favor of the 34 homeowners.
 

 Factual and Procedural Background
 

 Shell manufactured a PB resin used by Western and other companies to make PB pipes for plumbing systems. In the early 1980’s, PB pipes were installed as part of the plumbing systems of 34 new homes owned by the 34 homeowners who filed this action. Some of the 34 homes experienced leaks in their plumbing systems, and the 34 homeowners filed this action against Shell, Western and others involved in the design, manufacture, distribution and installation of the plumbing systems and their components.
 

 In an “omnibus” order apparently applying to multiple lawsuits involving PB plumbing systems, the court overruled a demurrer seeking dismissal of claims made by those homeowners who did not allege their plumbing systems had leaked or experienced other failures. Before trial, the court also denied Shell’s
 
 in limine
 
 motion for a finding that the owners of homes without leaks cannot state causes of action for either strict liability or negligence.
 

 The parties stipulated that 14 of the 34 homeowners had suffered no leaks in the plumbing systems of their homes.
 
 [3]
 
 The court denied Shell’s motion for a directed verdict against those 14 homeowners. The jury’s special verdicts found Shell liable to all 34 homeowners for negligence and Western liable to all 34 homeowners on a strict liability theory for design or manufacturing defects. The jury found Shell “liable for negligence as to those plaintiffs who have not had a leak in their plastic plumbing system.” The jury made special findings of the damages suffered by each of the 34 homeowners and then found that 80 percent of those damages were attributable to Shell and 20 percent were attributable to Western. The jury effectively found that the aggregate amount of damages suffered by all 34 homeowners was $222,282. However, after making offsets for the homeowners’ prior settlements with other defendants, the court entered separate judgments for each of the 34 homeowners against Shell and Western in the amount of $0.
 

 
 *208
 
 Discussion
 

 I
 

 The Owners of Homes Without Leaks Have Suffered No Damage Giving Rise to a Cognizable Action for Negligence
 

 Shell contends that the 14 owners of homes without leaks in their plumbing systems cannot state a cause of action for negligence because they have suffered no damage, and that the court erred by allowing the jury to decide Shell’s liability for negligence as to those homeowners. We agree.
 

 Although Shell and the 14 homeowners agree that these homes suffered no plumbing system leaks, the homeowners assert that their “damage” consists of the degradation and “micro-cracking” of their PB plumbing systems. They further assert they proved at trial that their plumbing systems were reasonably certain of failing in the future. Shell argues that these factors do not present any cognizable damage which would support a negligence cause of action.
 

 A
 

 Khan
 
 v.
 
 Shiley Inc.
 
 (1990) 217 Cal.App.3d 848 [266 Cal.Rptr. 106] is apposite to this case.
 
 Khan
 
 involved a patient who had an artificial valve implanted in her heart.
 
 (Id.
 
 at p. 850.) The patient was later informed that the implanted valve was one of a group of valves being recalled because of a propensity to fracture.
 
 (Id.
 
 at p. 851.) The patient suffered emotional and physical problems caused by anxiety and the concern that her heart valve might malfunction in the future and cause her almost certain death.
 
 (Ibid.)
 
 The patient filed an action against the valve manufacturer alleging negligence, strict liability, fraud and other causes of action.
 
 (Id.
 
 at pp. 851-852.) The complaint acknowledged that the heart valve “ ‘ha[d] not yet malfunctioned,’ ” but alleged the valve was “ ‘defective and likely to malfunction at any moment because of the conduct of the defendants] as alleged herein, thereby exposing [plaintiff] to the constant threat of imminent death or other serious physical injury and the anxiety, fear and emotional distress that results therefrom.’ ”
 
 (Id.
 
 at p. 852.) The trial court granted the defendants’ summary judgment motion because the patient’s heart valve had not yet failed.
 
 (Id.
 
 at p. 853.)
 

 The Court of Appeal rejected the patient’s argument that a malfunction of an inherently defective product is not required to establish a product liability claim.
 
 (Khan
 
 v.
 
 Shiley Inc., supra,
 
 217 Cal.App.3d at p. 854.) The court
 
 *209
 
 stated: “No matter which theory is utilized, however, where a plaintiff alleges a product is defective, proof that the product has malfunctioned is essential to establish liability for an injury
 
 caused by the
 
 defect.”
 
 (Id.
 
 at p. 855, original italics.)
 

 The court found this element of causation to be missing. It reasoned: “[The patient’s] alleged injury was not caused by any defect in the valve. Rather, it was caused, if at all, by the knowledge the valve may, at some future time, fracture.” (217 Cal.App.3d at p. 855.) Despite the patient’s emotional and physical symptoms, the court noted she had not yet been “victimized” and stated: “In the absence of product malfunction, [the patient] cannot establish defendants breached any duty owed to her.”
 
 (Id.
 
 at p. 856. ) The court further stated: “So long as the valve continues to function, no cause of action exists under any products liability theory.”
 
 (Id.
 
 at p. 857.) The court also confirmed that no cause of action for negligence existed “premised on the
 
 risk
 
 the valve
 
 may
 
 malfunction in the future.”
 
 (Ibid.,
 
 original italics.)
 

 San Francisco Unified School Dist.
 
 v.
 
 W.R. Grace & Co.
 
 (1995) 37 Cal.App.4th 1318 [44 Cal.Rptr.2d 305] applied the principle set forth in
 
 Khan
 
 in a different context. The trial court granted the defendant’s summary judgment motion on the ground that the statute of limitations had run on strict liability, negligence and other causes of action because the school district had discovered the
 
 presence
 
 of asbestos in its buildings more than three years before it filed suit.
 
 (Id.
 
 at pp. 1322-1324.) The Court of Appeal reversed the summary judgment because the mere
 
 presence
 
 of asbestos was insufficient to begin the running of the statute of limitations; rather, actual asbestos
 
 contamination
 
 was required.
 
 (Id.
 
 at pp. 1322, 1341-1342.) The court noted: “The statute of limitations does not begin to run and no cause of action accrues in a tort action until damage has occurred. [Citation.] If the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of ‘appreciable and actual harm, however uncertain in amount,’ that consists of more than nominal damages. [Citations.] . . . Cases contrast actual and appreciable harm with nominal damages, speculative harm or the threat of future harm.
 
 The mere breach of duty—causing only
 
 nominal damages,
 
 speculative harm or the threat of future harm hot yet realized—normally does not suffice to create a cause of action.
 
 [Citations.]”
 
 (Id.
 
 at p. 1326, italics added.)
 

 Citing the seminal case of
 
 Seely
 
 v.
 
 White Motor Co.
 
 (1965) 63 Cal.2d 9, 18-19 [45 Cal.Rptr. 17, 403 P.2d 145], the court in
 
 San Francisco Unified School Dist.
 
 further noted the distinction between physical injury to person or property and merely economic loss: “Until physical injury occurs—until
 
 *210
 
 damage rises above the level of mere economic loss—a plaintiff cannot state a cause of action for strict liability or negligence. [Citation.]”
 
 (San Francisco Unified School Dist.
 
 v.
 
 W.R. Grace & Co., supra,
 
 37 Cal.App.4th at p. 1327.) The court stated: “Other jurisdictions that adopt
 
 Seely's
 
 physical injury/ economic loss distinction routinely find that asbestos contamination constitutes the physical injury element of strict liability or negligence causes of action in an asbestos-in-building case. The dangerousness that creates a risk of harm alone has been held to be insufficient to support an award of damages—there must be physical harm caused by that product. [Citation.] At the release of asbestos fibers into the environment, the cause of action has been held to accrue and the statute of limitations to begin to run. [Citation.] The injury for which asbestos plaintiffs are being recompensed has been found to be the contamination of their buildings, not the mere presence of asbestos. [Citation.]”
 
 (Id.
 
 at pp. 1328-1329.)
 

 The court concluded: “As no cause of action could be stated
 
 for
 
 strict liability or negligence in an asbestos-in-building case without physical injury to person or property,
 
 Seely
 
 compels the conclusion that a tort cause of action cannot accrue until physical injury occurs. Once physical injury to property occurs—assuming that damage is the last element of the tort cause of action to occur—the cause of action accrues and the limitations period commences.
 

 “. . . In order to be consistent with the principles of
 
 Seely,
 
 it appears that until contamination occurs, the only damages that arise are economic losses that do not constitute physical injury to property recoverable in strict liability or negligence. Physical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case and the limitations period commence." (37 Cal.App.4th at pp. 1329-1330.)
 

 The court summarized its analysis: “In California, no cause of action accrues—i.e., the statute of limitations does not commence—until all elements of the cause of action, including that of damage or injury, have occurred. There must be appreciable harm before the damage element of a cause of action accrues, triggering the commencement of the limitations period. In a strict liability or negligence case, the compensable injury must be physical harm to persons or property, not mere economic loss. Accordingly, we hold that in an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner’s strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences.”
 
 *211
 
 (37 Cal.App.4th at p.1335.) Accordingly, the court reversed the summary judgment and remanded the matter to the trial court for determination of whether there had been actual asbestos contamination more than three years before the school district filed suit.
 
 {Id.
 
 at pp. 1341-1342.)
 

 In
 
 Seely
 
 v.
 
 White Motor Co., supra,
 
 63 Cal.2d at page 18, the California Supreme Court stated: “[I]n actions for negligence, a manufacturer’s liability is limited to damages for physical injuries and there is no recovery for economic loss alone. [Citations.]” Although
 
 Seely
 
 involved a breach of warranty claim making the court’s statement on negligence technically dictum, courts generally have adopted and applied this statement of law to negligence actions. (See
 
 Sacramento Regional Transit Dist.
 
 v.
 
 Grumman Flxible
 
 (1984) 158 Cal.App.3d 289, 293-294, 298 [204 Cal.Rptr. 736].)
 

 B
 

 Applying the foregoing principles to this case, we note that no element of “damage” exists for a negligence cause of action by the owners of homes without leaks in their plumbing systems. Although the 14 homeowners assert that their PB pipes are inherently defective and have suffered degradation and “micro-cracking,” these factors, if true, do not show that there has been the requisite “damage” for a negligence cause bf action. Both
 
 Khan
 
 and
 
 San Francisco Unified School Dist.
 
 hold that appreciable present harm, not merely the threat of future harm, is required.
 

 C
 

 To the extent the homeowners contend they have suffered damage to the PB pipes by degradation and “micro-cracking” of the PB pipes,
 
 Seely
 
 and its progeny preclude a negligence cause of action based on damage solely to the defective product.
 
 (Seely
 
 v.
 
 White Motor Co., supra,
 
 63 Cal.2d at pp. 18-19;
 
 Sacramento Regional Transit Dist.
 
 v.
 
 Grumman Flxible, supra,
 
 158 Cal.App.3d at pp. 298-300.) The homeowners cite
 
 J’Aire Corp.
 
 v.
 
 Gregory
 
 (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60] to support their assertion that damage to the product or other economic loss alone is sufficient to state a cause of action for negligence. Although
 
 J’Aire
 
 sets forth a limited exception to the general rule that economic loss alone is insufficient to state a negligence cause of action, the 14 homeowners do not meet the requirements for that exception.
 
 J’Aire
 
 involved a tort claim by a tenant for its lost profits against a contractor who failed timely to complete construction of tenant improvements pursuant to the landlord’s construction contract with the contractor.
 
 {Id.
 
 at pp. 802-803.) The California Supreme Court adopted a six-part test for determining when a “special relationship”
 
 *212
 
 exists between parties which would permit recovery in a negligence action for economic losses alone. “Those criteria are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant’s conduct and the injury suffered, (5) the moral blame attached to the defendant’s conduct and (6) the policy of preventing future harm. [Citation.]”
 
 {Id.
 
 at p. 804.) The court concluded all six criteria were met and the tenant could state a cause of action for negligent interference with prospective economic advantage.
 
 {Id.
 
 at p. 808.) The court found that the first factor was met because the construction contract was specifically for the renovation of tenant’s premises and the contractor knew that its performance would directly affect the tenant and its business.
 
 {Id.
 
 at p. 804.) The third factor was met because the tenant was clearly harmed when it was unable to operate its business for one month and suffered further losses when it had to operate its business without heat and air-conditioning.
 
 {Id.
 
 at p. 805.)
 

 The record here does not support application of the
 
 J’Aire
 
 exception. The first and third
 
 J’Aire
 
 factors were not met: (1) Shell’s manufacture of PB resin did not involve a transaction specifically intended to affect the particular needs of any of the 14 homeowners; and (2) there was insufficient certainty that the 14 homeowners suffered an injury and, in fact, the record shows the homeowners have yet to suffer
 
 any
 
 injury.
 

 Ott
 
 v.
 
 Alfa-Laval Agri, Inc.
 
 (1995) 31 Cal.App.4th 1439 [37 Cal.Rptr.2d 790] similarly concludes the
 
 J’Aire
 
 “special relationship” did not exist under the facts in
 
 Ott.
 
 The
 
 Ott
 
 court reasoned that the milking system the plaintiffs purchased was not shown to be “ ‘intended to affect’ the plaintiffs in any way particular to the plaintiffs, as opposed to all potential purchasers of the equipment.”
 
 (Ott, supra,
 
 at p. 1455.) The failure to meet the first condition of the special relationship test precluded application of the
 
 J’Aire
 
 exception for tort recovery of only economic losses; “the milking system was intended to affect the plaintiffs in the same way as all retail buyers,” thereby making economic damages alone unavailable in a negligence action.
 
 (Ott, supra,
 
 at p. 1456.) The court further noted: “[O]ne cannot infer that defendants took action intended to affect plaintiffs, nor that defendants reasonably could foresee any economic injury from malfunctioning equipment above that which
 
 any
 
 dairy would suffer if its milking system were substandard.”
 
 (Id.
 
 at p. 1457, fn. 10, original italics.) As in
 
 Ott,
 
 the record here does not support a finding that Shell’s actions were intended to affect the 14 homeowners in any manner different from the intended effect on all homeowners with PB pipes. Accordingly, the
 
 J’Aire
 
 exception does not apply here and the 14
 
 *213
 
 homeowners cannot recover for the economic losses of replacement or repair costs for the PB pipe or for the decreased market value or marketability of homes.
 
 [4]
 

 D
 

 The court erred by denying Shell’s motions for summary judgment and directed verdict and by allowing the jury to decide the negligence cause of action against Shell as to the 14 homeowners with home plumbing systems that had not leaked or otherwise failed. We reverse these 14 judgments against Shell, remand and direct the trial court to enter judgments in favor of Shell against those 14 homeowners. The judgments against Western are not reversed because Western has not filed an appeal from the judgments.
 

 II
 

 The Court Did Not Err by Finding the Homeowners Are Entitled to Their Section 1032 Costs
 

 In its appeal Western contends the trial court erred by finding that the 34 homeowners were prevailing parties entitled to their costs under section 1032. We disagree.
 

 Section 1032, subdivision (b) states: “Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.”
 

 Section 1032, subdivision (a)(4) states: “ ‘Prevailing party’ includes the party with a net monetary recovery, ... a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the ‘prevailing party’ shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.”
 

 The jury found Western strictly liable and awarded the 34 homeowners an aggregate amount of $222,282 in damages. However, after crediting the
 
 *214
 
 aggregate amount of settlements with other defendants, the court entered judgments against Western for $0. Both parties filed memoranda of costs and motions to tax the other party’s costs. The trial court granted the homeowners’ motion, denied Western’s motion and, citing
 
 Syverson
 
 v.
 
 Heitmann
 
 (1985) 171 Cal.App.3d 106 [214 Cal.Rptr. 581], awarded the homeowners all of their section 1032 costs as the prevailing parties.
 

 Western contends the court erred by finding that the homeowners, rather than Western, prevailed at trial. It asserts that the homeowners failed to obtain the “primary relief sought” and thus should be denied their costs. Western further asserts that the homeowners ultimately recovered no damages against it and that Western should be deemed the section 1032 “prevailing party” even though the jury found it strictly liable and awarded an aggregate amount of $222,282 in damages against it.
 

 As Western notes, the court in
 
 Pirkig
 
 v.
 
 Dennis
 
 (1989) 215 Cal.App.3d 1560 [264 Cal.Rptr. 494] stated at page 1566: “A plaintiff will be considered a prevailing party when the lawsuit yields the
 
 primary relief sought
 
 in the case. [Citations.]” (Italics added.) However, the
 
 Pirkig
 
 court also stated: “Prevailing on the issue of liability may be deemed sufficient in itself to determine a prevailing party under the broad definition of section 1032.”
 
 (Ibid.:,
 
 but see
 
 Childers
 
 v.
 
 Edwards
 
 (1996) 48 Cal.App.4th 1544, 1550, fn. 3 [56 Cal.Rptr.2d 328].) Further, the factual background of
 
 Pirkig
 
 is similar to the instant matter. In
 
 Pirkig
 
 the plaintiffs prevailed on the issues of liability and damages at both the first and second trials.
 
 (Pirkig, supra,
 
 at p. 1566.) However, the judgment did not award the plaintiffs any net monetary recovery because of credits for the amount of prior settlements with other defendants.
 
 (Id.
 
 at pp. 1563, 1566.) The
 
 Pirkig
 
 court held that the failure to obtain a net monetary recovery did not prevent the plaintiffs’ recovery of section 1032 costs, stating: “That such a coincidence does not affect the plaintiff’s right to recover costs and attorney fees under section 1032 is well established by the governing case law . . . [citations].”
 
 (Pirkig, supra,
 
 at p. 1566.) The court further stated: “The only reason [the plaintiffs] failed to obtain a net monetary recovery at the second trial was because [the plaintiffs] settled before trial with the sellers for a greater amount than awarded by the second court [at the second trial].”
 
 (Ibid.)
 
 Accordingly, the court affirmed the trial court’s award of section 1032 costs to the plaintiffs as the prevailing parties.
 
 (Pirkig, supra,
 
 at pp. 1565, 1568.)
 

 Contrary to Western’s assertion, the cases of
 
 Syverson
 
 v.
 
 Heitmann, supra, 171
 
 Cal.App.3d 106, and
 
 Ferraro
 
 v.
 
 Southern Cal. Gas Co.
 
 (1980) 102 Cal.App.3d 33 [162 Cal.Rptr. 238] are not, because of the 1986 amendment
 
 *215
 
 to section 1032, inapplicable. We agree with the statement in
 
 Pirkig
 
 that “the 1986 amendment to section 1032 did not bring forth a substantial change in the definition of ‘prevailing party,’ ” and those cases continue to have precedential effect.
 
 (Pirkig
 
 v.
 
 Dennis, supra,
 
 215 Cal.App.3d at pp. 1567-1568.)
 

 The 34 homeowners prevailed on the issues of liability and damages, receiving an aggregate jury award of $222,282. Had some of Western’s codefendants not settled with the homeowners prior to or during trial, judgments would have been entered against Western in the aggregate amount of 20 percent of $222,282. Under these circumstances, Western cannot proclaim itself to be the section 1032 prevailing party. The court correctly found that the 34 homeowners were section 1032 prevailing parties entitled to their costs against Western.
 
 [5]
 

 Disposition
 

 The judgments are affirmed, except we reverse the 14 judgments against Shell as to those homeowner respondents named in footnote 3,
 
 ante,
 
 and we remand with directions that the court enter judgments in favor of Shell as to them. We affirm the order awarding the homeowner respondents their section 1032 costs against Western. The parties shall bear their own costs of appeal.
 

 Huffman, Acting P. J., and Nares, J., concurred.
 

 Appellants’ petition for review by the Supreme Court was denied August 27, 1997.
 

 [1]
 

 We have accepted and considered an amicus curiae brief filed by the Association for California Tort Reform in support of Shell’s appeal.
 

 [2]
 

 All statutory references are to the Code of Civil Procedure.
 

 [3]
 

 Those 14 homeowners are: (1) Ernie Antinori, (2) Manuel and Nedra Bringas, (3) Bill and Linda Burton, (4) Ernesto and Myma Fune, (5) Richard and Tammi Lampke, (6) Louis and Robretta Lester, (7) Samuel and Maria Lopez, (8) Marlena Murphy, (9) Perry and Deborah Partow, (10) Carolyn Rogness, (11) Jeffrey and Monica Strong, (12) Terrance Sussan and Susan Williams Sussan, (13) Arthur and Ottilie Williams and (14) Chester and Nancy Woods.
 

 [4]
 

 All of the cases homeowners cite as support for their judgments against Shell are inapposite. Most of them are distinguishable from
 
 Seely
 
 because they involved injuries to property other than the product itself. (See, e.g.,
 
 Raven’s Cove Townhomes, Inc.
 
 v.
 
 Knuppe Development Co.
 
 (1981) 114 Cal.App.3d 783, 788-789 [171 Cal.Rptr. 334];
 
 Del Mar Beach Club Owners Assn.
 
 v.
 
 Imperial Contracting Co.
 
 (1981) 123 Cal.App.3d 898, 905, 913 [176 Cal.Rptr. 886, 25 A.L.R.4th 336];
 
 Pisano
 
 v.
 
 American Leasing
 
 (1983) 146 Cal.App.3d 194, 196-197 [194 Cal.Rptr. 77].)
 

 [5]
 

 We do not address the effect of Western’s section 998 offer to the homeowners because Western does not raise this issue in its opening brief. Further, we do not address the trial court’s award of costs to Shell because we dismissed as untimely the homeowners’ appeal of that award.