**IMC CHEMICALS INC., f/k/a North American Chemical Company,**
Plaintiff,

v.

**NIRO, INC., Defendant and Third–Party Plaintiff,**

v.

**DEC International, Inc., Third–Party Defendant.**

**Civil Action No. 98–2348 KHV.**

United States District Court,
D. Kansas.

Dec. 23, 1998.

Floyd R. Finch, Jr., Blackwell Sanders Peper Martin, LLP, Kansas City, MO, Tara E. Foss, Foland & Wickens, P.C., Kansas City, MO, for IMC Chemicals, Inc.

William R. Sampson, Scott C. Nehrbass, Shook, Hardy & Bacon L.L.P., Overland Park, KS, E. Hutchinson Robbins, Jefferson V. Wright, Miles & Stockbridge P.C., Baltimore, MD, for Niro, Inc.

Brett C. Coonrod, Spencer J. Brown, Deacy & Deacy, Kansas City, MO, David Easton, Michael J. Modl, Andrew J. Clarkowski, Axley Brynelson, LLP, Madison, WI, for DEC Intern., Inc.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

IMC Chemicals, Inc. filed a three-count complaint against Niro, Inc., asserting contract and tort claims which arise from Niro's agreement to develop and install fluid bed

dryers for IMC's mineral manufacturing facility in California. Niro in turn filed a three-count third-party complaint alleging breach of contract and seeking indemnification from DEC International, Inc., which contracted with Niro to fabricate tube bundles for the bed dryers, under contract and tort theories of recovery. This matter comes before the Court on Niro's *Motion For Partial Dismissal For Failure To State A Claim* (Doc. # 3) filed August 27, 1998, which asks the Court to dismiss Count II of IMC's complaint for failure to state a claim upon which relief can be granted. Also before the Court is *DEC International Inc.'s Motion to Dismiss* (Doc. # 22) filed October 29, 1998, which asks the Court to dismiss Count III of Niro's third party complaint for failure to state a claim. For reasons set forth below, the Court overrules both motions.

### 12(b)(6) Motion to Dismiss Standard

A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All well-pleaded factual allegations in the complaint must be accepted as true, *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992), and viewed in the light most favorable to the nonmoving party.

The issue in reviewing the sufficiency of plaintiff's complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. Although a plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### Facts

The following facts are accepted as true for purposes of this motion.

IMC Chemicals, Inc. is a Delaware corporation with its principle place of business in Overland Park, Kansas.[1] IMC manufactures soda ash and boron products in Trona, California, where it injects a solution beneath a dry lake bed, collects the resulting brine, and processes it to extract minerals. This process extracts moisture and produces electricity as a by-product.

In the early 1990's, IMC solicited proposals to modernize its production facility through development and installation of fluid bed dryer technology. The bid proposal set specifications for engineering, design, materials, and workmanship, and required that the dryer satisfy specified criteria for performance, including compliance with standards set by the American Society of Mechanical Engineers Code ("the ASME Code"). Niro, Inc. was one of several bidders, and it represented that it had designed the system to meet IMC specifications.

On April 2, 1993, IMC and Niro entered an agreement entitled "NIRO INC. PROCESS SYSTEMS FOR SODA ASH EXPANSION PROJECT." Complaint at ¶ 15. The agreement contemplated that IMC would purchase a series of dryers in six phases. Niro assumed responsibility for ensuring that its subcontractor, DEC International, Inc., designed and constructed the heat exchanger tube bundles for the dryers to meet the ASME Code.

Niro contracted with DEC to fabricate and build the dryer tube bundles in accordance with plans and specifications provided by Niro. Niro asserts that its drawings required the tube bundles to be constructed "per ASME Code." *See* Doc. 7, Ex. B, Purchase Order. The purchase order included warranties that the materials or services would be free from defects and conform to applicable specifications and drawings. In the event of defect or failure in the furnished materials or services, Niro reserved the right to pursue any remedies provided by law. Further, DEC agreed to defend, indemnify and save Niro harmless "from and against all losses, costs, expenses (including, without limitation, attorneys' fees) and damages, including, without limitation, any consequential, incidental and punitive damages caused in whole or in part by: ... (2) any breach of ... [DEC's] warranties or guarantees, either express or implied, (3) any other breach of the terms of this Purchase Order." *See* Doc. # 7, Ex. B, Terms and Conditions. The pur-

---

1. Until May 1998, IMC was known as North American Chemical Company.

chase order provided that Maryland law applied to "all matters relating to the validity, meaning and performance of this Purchase Order." *Id.*

IMC alleges that Niro failed to properly supervise the construction of the heat exchanger bundles and that DEC used an erroneous welding technique. Consequently, the welds cracked and leaked and the dryer tube bundle design did not meet ASME code standards. IMC alleges that Niro's negligence and breach of contract caused damages which included reduced production of minerals, damage to the minerals, and reduced production of electricity.[2] IMC's complaint against Niro alleges reckless and/or negligent misrepresentation (Count I); negligent design and failure to contract for and supervise DEC's work (Count II); and breach of contract (Count III). Niro filed a third-party complaint against DEC which asserts two claims based on the contract between Niro and DEC and one claim (Count III of the third-party complaint) for common law indemnification. The latter claim, more specifically, is that "if IMC was damaged as alleged, that damage was the proximate result of DEC's negligence." *Third–Party Complaint* (Doc. # 7) at ¶¶ 43–44.

## Analysis

### A. *Niro's Motion to Dismiss*

In its complaint, IMC asserts that California law controls all of its claims because "California is where the injury occurred, the contract was to be performed, the last necessary act for formation of the contract occurred, and the breach of warranty occurred." *Complaint* (Doc. # 1) at 2. In its initial brief in support of its motion, Niro asserts that Maryland law applies to the contract claims and that Kansas law applies to the tort claims, but concedes that "solely for the purposes of Niro's Motion for Partial Dismissal and because at this stage the Court must presume the truth of Plaintiff's allegation regarding controlling law, Niro will apply California law to its Motion." [3] *See Memorandum Of Law In Support Of Motion*

For Partial Dismissal For Failure To State A Claim (Doc. # 4) filed August 27, 1998, at 3. Niro switched gears after IMC responded to its motion to dismiss, arguing for the first time that Maryland law applies. The Court does not address the argument that Niro is entitled to dismissal of Count II under Maryland law because Niro did not include this argument in its memorandum in support of its motion to dismiss. Instead, Niro raised the issue for the first time in its reply brief, after IMC had responded to Niro's motion to dismiss based on California law.

D.Kan. R. 7.1(b) governs motion practice in this court. The rule permits parties to file a dispositive motion, a response to the motion, and a reply by the movant. *Id.*; *Thurston v. Page,* 931 F.Supp. 765, 768 (D.Kan.1996). Courts in this district have been reluctant to consider issues raised for the first time in a reply brief. See *Thurston,* 931 F.Supp. at 768 ("The court will not consider the new argument ... presented in defendant's reply brief when that issue was not raised in the initial motion for summary judgment") (citing *Glad v. Thomas County Nat'l Bank,* No. 87–1299–C, 1990 WL 171068) (D.Kan. Oct.10, 1990) (court will not consider new arguments and issues presented in a reply brief because plaintiff has not had an opportunity to respond)); *Mike v. Dymon, Inc.,* No. 95–2405–EEO, 1996 WL 427761, at *2 (D.Kan. July 25, 1996) ("In pursuit of fairness and proper notice, the court generally summarily denies or excludes all arguments and issues first raised in reply briefs.") (internal quotations omitted) (quoting *Wagher v. Guy's Foods, Inc.,* 765 F.Supp. 667, 671 (D.Kan.1991)).

*Medina v. City of Osawatomie,* 992 F.Supp. 1269 (D.Kan.1998).

Niro asserts that under California law, its contract is one for the sale of goods and that the economic loss doctrine therefore bars IMC from any tort recovery on Count II. IMC contends that the contract between the

---

**2.** IMC seeks actual and consequential damages resulting from Niro's alleged negligence and breach of contract.

**3.** Although IMC's complaint did not expressly incorporate the contract by reference, Niro has

attached a copy to its reply brief, *see Reply Memorandum In Support Of Motion For Partial Dismissal For Failure To State A Claim* (Doc. # 14) filed October 8, 1998, Ex. A.

parties is a service contract and that the economic loss rule is therefore inapplicable. Alternatively, IMC contends that even if the contract is not a service contract but one for the purchase of goods, the economic loss doctrine does not apply because the Count II tort claim seeks damages to property other than the defective product itself.[4]

In *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the California Supreme Court held that a truck manufacturer could be held strictly liable for physical injuries caused to a person or property, but not for purely economic losses. *Id.* at 18–19, 45 Cal.Rptr. 17, 403 P.2d 145. The *Seely* court reasoned in dictum that

> [t]he distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

*Seely*, 63 Cal.2d at 18, 45 Cal.Rptr. 17, 403 P.2d 145.

A number of appellate courts in California have applied the *Seely* dictum to negligence claims. *See North Am. Chem. Co. v. Superior Court*, 59 Cal.App.4th 764, 69 Cal.Rptr.2d 466, 474 (Cal.App.1997) (listing cases). These cases indicate that under California law, "in actions arising from the sale or purchase of a defective product, plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses; if they cannot, then they would be precluded from any tort recovery in strict liability or negligence." *Id.* at 474–75. This rule is necessary so that the Uniform Commercial Code, which governs commercial transactions, is not completely subsumed by the law of tort. *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 204 Cal.Rptr. 736 (Cal.App.1984). But "transactions involving the construction or modification of structures ... are generally not governed by the Uniform Commercial Code, which applies to transactions involving movable 'goods.'" *Id.* Thus, "judicial creation of a tort remedy for economic loss caused by the negligence of a builder of a structure poses no conflict with the law of sales as set forth in the Uniform Commercial Code." *Id.* (citations omitted). "[W]here the commercial agreement between the parties involves the performance of services, the Commercial Code has no application." *North American Chemical Co.*, 69 Cal. Rptr.2d at 474–75.

■ IMC asserts that its contract with Niro is a contract for services, not for goods, and thus the economic loss rule does not bar its negligence claim. Under California law courts must ascertain the "essence of the agreement" to determine whether a contract is for the sale of goods or services. *See Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.*, 256 Cal.Rptr. 735, 739 (Cal.App.1989). The question is whether the provision of services or of goods predominates. *Id.* "Ordinarily, the question whether a particular transaction is a construction contract or a contract of sale is an

---

**4.** The Court does not agree with Niro that based on the allegations of the complaint, the contract is necessarily one for the sale of goods. It therefore finds that IMC is entitled to present evidence on that issue and disposes of Niro's motion without reaching IMC's argument that the economic loss doctrine does not apply because Count II seeks damages to property other than the defective product itself.

issue of material fact, which must be resolved at trial." *Holden v. Placid Oil Co.*, 512 F.Supp. 644, 647 n. 2 (E.D.La.1981) (where district court ruled in a summary judgment proceeding that the transaction was a sale of goods).

IMC asserts that the written agreement for "the design, engineering and fabrication" of the dryer beds had as its essence the provision of services. Apparently finding no California law to supports its contention that the agreement was one for the sale of services, IMC cites case law from other jurisdictions. *See, e.g., Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 436 F.Supp. 262 (D.Me. 1977) (contract to furnish design, procurement and construction management was "typical engineering-construction contract involving predominantly services," and not contract for sale). In response, Niro cites cases where courts have found that the predominant purpose of a contract to design and manufacture equipment was a contract for the sale of goods. *See, e.g., Horbach v. Kaczmarek*, 934 F.Supp. 981, 984 (N.D.Ill.1996) (contract to design, manufacture and test tire pyrolysis and shredding equipment was predominantly for sale of goods); *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612 (Mich.1992) (thrust of contract for sale and operation of milking machine system was to acquire goods; design and installation services were incidental).

■ In this case, the essence of the contract cannot be determined from the face of the complaint. Viewing all well-pleaded factual allegations in the complaint as true, and viewing them in the light most favorable to IMC, it cannot be said "beyond doubt" that IMC can prove no set of facts in support of its claim that the contract had as its essence the provision of services.

Viewing the facts in a light most favorable to plaintiff, and applying California law, the Court finds that Niro's motion to dismiss should be overruled. The Court notes, however, that this finding does not conclusively determine what state's law ultimately will apply to IMC's claims. Also, to the extent that IMC's tort and contract damages overlap, IMC will be required to elect its remedies at some point, even if its tort claim survives. *See North Am. Chem. Co.*, 69 Cal. Rptr.2d at 471.

**B.  DEC's Motion to Dismiss**

DEC seeks to dismiss the third-party indemnity claim, arguing that the economic loss doctrine defeats any right of indemnification by Niro. Specifically, DEC claims that the contract between IMC and Niro was one for the sale of goods; that as a result, under the economic loss doctrine, IMC cannot recover tort damages for purely economic loss; that Niro's common law indemnity claim seeks only economic losses; and that Niro's claim is therefore subject to dismissal under Rule 12(b)(6). This motion essentially piggybacks on Niro's argument that IMC seeks only economic losses from Niro.[5]

As noted above, the Court has denied Niro's motion to dismiss because it cannot determine from the face of the complaint whether the contract between IMC and Niro was in essence one for the sale of goods or one for the sale of services. In so ruling the Court did not decide whether IMC's tort claim includes only economic loss. The Court does so at this time, inquiring into the character of the loss for which Niro seeks indemnification.

Niro's claim appears to assert a tort-based right which the Restatement of Restitution, § 96, defines as follows:

> A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.

Both DEC and Niro cite Maryland law on this question. Maryland has adopted a liberal view of what it means to be "without personal fault," as that term is used in Section 98, "having allowed a passively negligent tortfeasor to recover against 'the sole actual wrongdoer and creator of the dangerous condition' that caused the injury." *Hanscome v. Perry*, 75 Md.App. 605, 542 A.2d 421 (Md. App.1988). Niro argues that if IMC is allowed to maintain a negligence claim against it, Niro must be allowed to show that any

---

5. DEC incorporates Niro's brief on this issue.

negligence on its part was passive and secondary to DEC's negligence in fabricating the tube bundles.

■ Under Maryland law, "there is no recovery under a negligence theory for purely economic losses, unless the defect causes a dangerous condition creating a risk of death or personal injury." *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 634 A.2d 1330, 1332–33 (Md.1994). The question then becomes whether IMC's claimed losses, for which Niro seeks indemnity, are purely economic in nature. Economic losses under Maryland law "include such things as the loss of value or use of the product itself, the cost to repair or replace the product, or the lost profits resulting from the loss of use of the product." *Id.* at 1332. IMC's alleged losses include the expense of repairing the dryers and lost profits, which unquestionably fall in the category of economic losses. But IMC also alleges damage to property, i.e. the chemicals (soda ash and boron) that had been produced. Under Maryland (or California law), this loss would arguably be a loss of physical property rather than economic loss. *See Decoster*, 634 A.2d at 1334 (chickens lost when defective switch led to power failure constituted loss of physical property that could support negligence claim). To the extent that Niro may be found liable to IMC for these or other non-economic damages, Niro's claim against DEC may be read to include non-economic damages and dismissal would be inappropriate.[6] *Cf. Cooper Power Sys., Inc. v. Union Carbide Chem. & Plastics Co., Inc.*, 123 F.3d 675, 684 (7th Cir.1997) (where plaintiff is relegated to contract theories because of economic loss doctrine, defendant cannot recover plaintiff's economic damages from third party defendant absent warranty or contract).

DEC also argues that it would be "logical" to dismiss Niro's common law indemnity claim because Niro asserts an independent indemnity claim in contract. The Court acknowledges that Niro's contractual indemnity claim is quite broad and that it arguably could swallow any common law indemnity

rights. At some point Niro will be required to elect its remedies. At this stage in the litigation, however, it would be improper to dismiss the common law indemnity claim.

**IT IS THEREFORE ORDERED** that the *Motion For Partial Dismissal For Failure To State A Claim* (Doc. # 3) which Niro, Inc. filed August 27, 1998, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that *DEC International, Inc's Motion to Dismiss* [Count III of the third party complaint] (Doc. # 22) filed October 29, 1998, be and hereby is **OVERRULED.**

---

6.  DEC argues that "there is no dispute that Niro is claiming only economic losses in its 'common law indemnity' claims." *Brief In Support Of DEC International, Inc.'s Motion To Dismiss* (Doc. # 23) filed October 29, 1998, at 5. This pronouncement is unsupported by any citation to the record, and the Court is unconvinced of its accuracy.